SCOTTISH UNION AND NATIONAL INSURANCE COMPANY v. ANDREWS & MATTHEWS ET AL.

Decided June 24, 1905.

**1.—Fire Insurance—Iron Safe Clause—Sufficient Set of Books.**

A provision in a policy of insurance on a stock of goods requiring the insured to keep inventories and a set of books which should clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, was sufficiently complied with where the insured, in addition to the inventories, kept a cash book and ledger into which, at the end of each day, there were entered from the daily blotters the amount of the cash sales and the sales made on credit, the latter being in some instances fully itemized and in others showing only the credit sales for the day to each given purchaser, and the court, upon uncontradicted evidence to the above effect, did not err in refusing to submit to the jury the issue of noncompliance in this respect.

**2.—Same—Forfeiture Clause—Construction.**

Clauses of forfeiture in an insurance policy are to be construed most strictly against the insurance company.

**3.—Same—Assignment of Policy as Collateral.**

A clause in a policy which in general terms prohibits its assignment before loss should be construed as only intending to prohibit a complete and absolute divestiture of title by the insured, and not a conditional transfer to a creditor as collateral security which in effect only gives the creditor a lien on the proceeds of the policy to the extent of his debt.

**4.—Same—Loss—Payable Clause—Notice to Agent—Fraud.**

Where the insured had the right under the policy to assign it as collateral. the subsequent act of the insurer in refusing to assent to a loss-payable clause which the local agent had attached to the policy and in instructing him to eliminate such clause, in no way affected such right of assignment, nor was such instruction a notification to the agent that the insured would cancel the policy if the insured should assign it as collateral, and hence the failure of the agent to report to the insurer that he had, as agent also for a bank, creditor of the insured, taken an assignment of the policy to himself as collateral to secure the bank, was not a fraud on the insurer.

**5.—Same—Liability of Agent.**

Since the assignment of the policy as collateral did not increase the risk and the agent had no instruction forbidding it, his failure to notify the insurer of it did not render him liable over to the insurer for the loss, the property having been destroyed by fire, even though the insurer might have canceled the insurance had it known of the assignment.

Appeal from the District Court of Panola. Tried below before Hon. Richard B. Levy.

*Crane & Gilbert,* for appellant.—1. It being admitted that the books of original entry of the insured were destroyed by fire, the question of whether the iron safe clause had been substantially complied with, was a question of fact, and should have been submitted to the jury. Brown v. Insurance Co., 89 Texas, 596. The books were not kept in compliance with the requirement. Monger & Henry v. Insurance Co., 79 S. W. Rep., 7; Kemendo v. Insurance Co., 94 Texas, 367; Roberts, Willis & Taylor Co. v. Insurance Co., 48 S. W. Rep., 559.

2. Under the circumstances of this case, the execution and delivery of the instrument authorizing the First National Bank of Carthage to collect the proceeds of the policy in the event of loss, was a fraud upon the right of the insurance company, and avoided the policy. Insurance Co. v. Eastman, 73 Texas, 179; Jackson v. Insurance Co., 2 N. W. Rep., 103; Cairstairs v. Insurance Co., 18 Fed. Rep., 473. The suppression of the facts was a fraud on the rights of appellant sufficient to vitiate the policy. Brown v. Montgomery, 20 N. Y., 287; Minor v. Shearon, 112 Mass., 477; Coles v. Kennedy, 81 Iowa, 360; Newell v. Randall, 32 Minn., 171; Mallory v. Leach, 35 Vt., 156; 82 Am. Dec., 625; Lomerson v. Johnson, 47 N. J. Eq., 312-314. The concealment was active and therefore fraudulent. Greel v. Lomax, 89 Ala., 420.

3. The defendant Cooke being the agent of appellant, issuing the policy sued on, and having been specially instructed not to make the same payable to any other than the insured, and having violated said instructions, was liable to the defendant company for the loss in this case, which was incurred by reason of his continuing in force a policy which was operating to the advantage of the First National Bank of Carthage, contrary to the express instructions of the defendant. Franklin F. Ins. Co. v. Bradford, 201 Pa., 32, 55 L. R. A., 408; Bradford v. Insurance Co., 49 L. R. A., 530.

*F. H. Prendergast,* for appellees Andrews & Matthews.—1. The policies were delivered to the bank by the insured as collateral security before the fire. Did this avoid the policy? In the case of Keys v. Continental Insurance Co., 74 S. W. Rep., 164 (Mo.), the court says: "The question arises whether the deposit of the policy with Heaton as collateral security was a transaction that fell within the clause of the avoidance. This question is answered in the negative by all the cases we have found in which the point is decided, and by all the text books. Such a disposition of the policy will be held valid unless restrained expressly or by necessary implication, and the ordinary provision against assignment does not restrain it." Ellis v. Krentzinger, 27 Mo., 311 (72 Am. Dec., 270); True v. Insurance Co., 26 Fed. Rep., 83; Griffey v. Insurance Co., 100 N. Y., 417 (53 Am. Rep., 202); Lynde v. Newark Ins. Co., 139 Mass., 57 (28 N. E., 222); 3 Joyce on Ins., 211-215; 2 May on Ins., 379; Ostander on Ins., 212; 13 Am. & Eng. Cy. Law, 187; 7 Id., p. 1026; Woods Fire Ins., sec. 339, 340; Richards on Ins., sec. 148, p. 162.

2. The insured kept and preserved the book called for by the policy. German Ins. Co. v. Pearlstone, 45 S. W. Rep., 838; Assurance Co. v. Redding, 68 Fed. Rep., 708.

Did the court err in not submitting to the jury the question as to whether appellee had kept a proper set of books? Appellant made no point on the fact that appellee owned the goods, that they were insured, and were burned, and the amount of the loss; so appellant admitted ·a prima facie case. Insurance Co. v. Rivers, 9 Texas Civ. App., 177 (28 S. W., 453); German Ins. Co. v. Pearlstone, 45 S. W. Rep., 838.

*J. G. Woolworth* and *W. R. Anderson,* for appellee J. W. Cooke.— 1. It is well settled by all the authorities obtainable, as well as by the text books, that Andrews & Matthews, under the contract as contained in the policy, had the right to deposit the policy as collateral security for the debt, and that such disposition of the policy on their part would not avoid it. The case of Key v. Continental Insurance Co., 74 S. W. Rep., 164 (Mo.), and the authorities there cited settle this question beyond any peradventure and no authority to the contrary is cited by appellant.

2. If it be conceded that Andrews & Matthews had the right under the terms of the policy to deposit it as collateral security for debt, what reason could be given for holding Cooke liable for accepting collateral security for debt due the First National Bank of Carthage (of which he was cashier at the time), in face of the fact that it must be admitted that any other bank or cashier thereof could have accepted said policy as collateral security without liability.

3. To hold Cooke, who was at the time cashier of the First National Bank of Carthage, liable for accepting collateral security for debt due said bank that any other bank or cashier thereof could have accepted without liability would be illegal, unjust, unreasonable and nonsensical to the extreme. Wherefore we submit that this case should be affirmed as to J. W. Cooke, appellee.

· PLEASANTS, Associate Justice.—This suit was brought by appellees, Andrews & Matthews, to recover upon a policy of fire insurance for $1,500, issued to them by appellant upon a stock of goods and merchandise owned by said appellees which had, subsequent to the issuance of said policy, been destroyed by fire.

In addition to a general denial the defendant's answer contains special pleas in which it is averred that the policy sued on was void for the following reasons: (1) Because the plaintiffs had failed to comply with the clause in the policy which required them to keep and preserve in an iron safe a set of books containing a complete record of their business. (2) Because plaintiff had in violation of the express terms of the policy transferred and assigned it before loss to the First National Bank of Carthage.

The answer further avers, in substance, that when the policy was issued, or soon thereafter, J. W. Cooke, the agent of defendant who wrote the policy and who was also the cashier of the First National Bank of Carthage, attached a clause thereto by which it was provided

that the loss, if any should occur thereunder, would be payable to said bank as its interest might appear, and notified defendant that he had attached said clause to the policy; that as soon as it was informed of this fact defendant, through its general agents, Messrs. Trezevant & Cochran, notified its said agent Cooke that it was unwilling to carry a policy upon a stock of merchandise with the loss payable to any one other than the insured, and directing him to have said clause eliminated from the policy; that in accordance with the instruction Cooke had the objectionable clause eliminated, but immediately thereafter he procured from plaintiffs a written transfer of the policy making the same payable to him as cashier of said bank and had said transfer and policy delivered to him by plaintiffs, for the purpose of securing said bank in an indebtedness due it by plaintiffs, and fraudulently concealed these facts from the defendant until after the property was destroyed by fire; that the policy was thus transferred to said bank contrary to the express instructions of defendant, of which all parties had notice, and that if defendant had known of this transfer it would have promptly cancelled the policy; that the transfer of the policy to Cooke for the purpose aforesaid was an attempt to force upon defendant a risk it had expressly refused to carry and was a violation of the clause in the policy prohibiting its assignment.

It is further averred that the procurement by Cooke of said transfer and his concealment of the fact from the defendant was such fraud as rendered him liable for any loss that defendant may have suffered thereby, and it prayed that he be made a party and that in event judgment should be rendered against it on said policy that it recover over against him the amount thus recovered by plaintiffs against it.

The defendant Cooke answers this cross-bill by general denial and by special plea in which it is averred that the transfer of the policy to him as alleged in the petition was not in violation of the terms of the policy or of the instructions given him by the defendant company.

The trial in the court below was to a jury. After all the evidence had been introduced the defendant company requested the court to instruct the jury to return a verdict in its favor. This request was refused by the trial judge, and upon his own motion he gave the jury peremptory instructions to find a verdict in favor of plaintiffs and the defendant Cooke. The jury returned a verdict as directed and judgment was rendered in accordance therewith.

The issuance of the policy by the defendant company and the loss as claimed by plaintiffs was shown by undisputed evidence. The evidence upon the issue raised by defendant's special pleas was as follows. The policy contained the following covenants and warranties:

"(1) The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date.

"(2) The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and also

from date of last preceding inventory, if such has been taken, and during the continuance of this policy.

"(3) The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventory in some secure place not exposed to a fire which would destroy the aforesaid building, and unless such books and inventories are produced and delivered to this company for examination after loss or damage by fire to the personal property insured hereunder, this policy shall be null and void, and no suit or action shall be maintained hereon. It is further agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under this policy, nor a waiver of any defense to same.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the subject of insurance be a manufacturing establishment and it be operated in whole or in part at night later than ten o'clock, or if it cease to operate for more than ten consecutive days; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time; or if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if the subject of insurance be personal property, and be or become encumbered by a chattel mortgage; or if with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase or hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss; or if illuminating gas or vapor be generated in the described building (or adjacent thereto for use therein)."

It was shown that the plaintiffs kept a day book, or what is sometimes called a blotter, in which they entered all their daily sales as the sales occurred, in substantially the following form: In the event that it was a cash sale, they would enter so much cash. In the event the goods were sold on credit, they would enter the name of the purchaser thus:

John Smith, Dr.

To 2 pr. shoes at $2.00................$4.00
To 1 hat, $5.00...................... 5.00
Sugar ............................. 1.00
Coffee ............................. 1.00
Tob., 10 lbs., at 50c................. 5.00

In this way each item purchased was entered on the blotter, and its price entered opposite on the same page. One of these blotters was shown to contain one hundred and ninety-five pages, some of them less. It was shown that during the year's business several of these had accumulated, and were never kept in an iron safe or other safe place, but were habitually left in the store, and were burned by the same fire that destroyed the goods in question. It was further shown that the cash sales shown by these blotters were copied into a cash book. That the credit sales were copied into a ledger, which was exhibited to the court and jury, but that in more than half the sales the items were not copied, but a summary only.

The only books kept by the plaintiffs were the ledger, the blotters, the cash book, and an invoice book. These with the original bills, constituted all the records kept by them. They took an inventory January 12, 1903, and from that date they kept all the invoices or original bills of goods purchased, and exhibited same at the trial. They kept a blotter which showed all cash and credit sales up to the night before the fire occurred. This blotter showed the name of the purchaser, and the items that he purchased, and their value or price at which they were sold. Each night these would be transferred to the ledger. The entry in the ledger would show the name of the purchaser, sometimes it would show the items just as the blotter did, and sometimes it would show only the name of the purchaser and the total of that day's purchase. They also kept a cash book, to which all cash sales were transferred. The cash book and ledger were preserved in a fireproof safe and exhibited at the trial. They also kept an invoice book in which a statement of all goods purchased was entered. This book was preserved and exhibited at the trial.

The policy was issued on December 19, 1902, and the goods were destroyed by fire on December 18, 1903. On May 3, 1903, J. W. Cooke, the agent who issued the policy, and who was also cashier of the bank, put upon the policy sued on a loss-payable clause, making it payable to the First National Bank of Carthage as its interest might appear. And on the 11th day of May, 1903, the general agents of the company wrote to said agent as follows:

"Dallas, Texas, May 11, 1903.

No. 2487543 Fire Association and No. 2322284 Scottish-Union— Andrews & Matthews.

J. W. Cooke, Esq., Carthage, Texas:

Dear Sir: We have your indorsements of the 3d inst., attaching a loss-payable clause to these policies, making them payable to the First National Bank of Carthage. As these policies cover on a stock of general merchandise, we beg to say that we can not approve these endorsements. Both these companies object to a loss-payable clause on policies covering on personal property, and we will have to ask you to eliminate this clause by another endorsement. We hope you can do this and let us have copies on regular endorsement blanks of the companies, showing the matter has had attention. Yours truly,

(Signed) Trezevant & Cochran,
General Agents."

Cooke testified that he received this letter, and in compliance with the directions therein given, eliminated that loss-payable clause from the policy. That after this had been done, to wit, on the 18th day of May, 1903, said Cooke procured the insured to execute the following agreement:

"The State of Texas,
County of Panola.

Carthage, Texas, May 18, 1903.

This is to certify that we have this day delivered to J. W. Cooke, cashier of First National Bank, policy 3431599, L. & L. Fire Insurance Co., and No. 297245, Southern Insurance Co., and No. 1081, Phoenix Insurance Co.; 2487543, Fire Association of Philadelphia; 2622847, Scottish-Union & National; and it is agreed and understood that in case of a loss under said policies, that the amount due on said policies to be paid to J. W. Cooke, cashier First National Bank of Carthage, Texas.

(Signed)     Andrews & Matthews.

Witness:     J. G. Woolworth."

Cooke testified that in pursuance of this last agreement, the policy was delivered to him, and of the execution of this agreement and the delivery of the policy thereunder to him, he never notified the defendant company until after the property covered by the policy was destroyed by fire. He further testified in substance that the purpose of having the loss-payable clause in the policy, and the purpose of having the insured to make the transfers after this clause had been eliminated from the policy, was to secure the First National Bank of Carthage in the payment of an indebtedness at that time about $3,000, and at the date of the trial about $2,000. He stated that he did not think he was binding the insurance company; that he was acting for the bank, and not for the insurance company.

It is unnecessary to discuss the various assignments of error categorically. The questions presented by the record are concisely stated in appellant's brief as follows: "(1) Was the policy avoided by the breach of the iron safe clause? (2) Did the assignment of the policy to J. W. Cooke, cashier of the First National Bank of Carthage, under the circumstances of this case, avoid the policy? (3) Did the concealment of the assignment of the policy avoid same? (4) If the policy has not been avoided, did the conduct of Cooke, the agent of the appellant company, in compelling it to carry a risk of a kind and character that it had instructed him that it would not carry, make him liable for whatever loss was incurred by appellant?

Growing out of these questions is the further one: In view of the fact that the iron safe clause of the policy, if complied with at all, was only substantially complied with, did not the court err in taking the question of substantial compliance from the jury, and in peremptorily instructing them to find a verdict for the plaintiffs? And did not the court err in taking from the jury the question of liability of Cooke, the agent, on the admitted facts, and instructing a verdict in his favor?"

We think all of these questions should be answered in the negative.

In our opinion the evidence not only fails to show a breach by plaintiffs of the iron safe clause of the policy, but is insufficient to raise an issue as to whether the insured failed to substantially comply with the requirements of said clause. The terms of the iron safe clause, before set out, do not provide that all of the books used by the insured in the conduct of their business should be preserved, but only required them to keep and preserve a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments, both for cash and on credit, from the date of the inventories provided for in subsequent clauses of the policy.

The evidence shows that the ledger and cash book contained a complete record of all of the sales made by plaintiff, both cash and credit, and the fact that the several items of merchandise sold on credit were not shown in the ledger in no way affected the completeness of the record as to the value of the goods sold, and this was the only inquiry material to appellant. In the issuance of the policy the several articles of merchandise which went to make up the stock of goods were not valued or insured separately, and therefore it was no concern of appellant as to what were the articles sold. All that it was entitled to know was the value of the goods sold in order that it might, by subtracting the gross amount of sales from the value of the goods as shown by the inventories and invoices, ascertain the amount of loss. The books kept by the insured and presented on the trial furnished this information and show a compliance by the assured with the terms of their contract.

If the appellant for any reason desired the insured to preserve the day books or blotters showing the several items of merchandise sold, or deemed it important that the record of the business which it required the insured to keep should contain such itemized statement, it should have inserted such requirement in the contract of insurance.

No rule is more just, and none more firmly established by the decisions, than that which requires that clauses of forfeiture in a policy of insurance be construed most strongly against the insurance company. The company having agreed to assume the risk of loss and having received the consideration therefor, can escape liability only by showing that the insured was guilty of some act or omission which in some way contributed to the loss, or which was in violation of the plain and unequivocal terms of the contract of insurance. Bills v. Insurance Co., 7 Texas, 551; Goddard v. Insurance Co., 67 Texas, 71; Insurance Co. v. Hazelwood, 75 Texas, 347; Wood on Fire Ins., secs. 60, 181.

In our conclusion that the evidence fails to show even a technical violation by the insured of the iron safe clause is not sound, we are of opinion that upon the facts stated no other reasonable conclusion can be reached than that there was a substantial compliance by the insured with the requirement of said clause, and therefore the trial court did not err in failing to submit this issue to the jury. Insurance Co. v. Pearlstone, 45 S. W. Rep., 838; Brown v. Insurance Co., 89 Texas, 596; Railway Co. v. Faber, 77 Texas, 155.

The transfer and delivery of the policy to Cooke as collateral to secure the payment of the indebtedness due the bank was not a violation of the clause prohibiting the assignment of the policy before loss. It

seems to be well settled that a clause in a policy of insurance which in general terms prohibits its assignment before loss should be construed as only intending to prohibit a complete and absolute divesture of title by the insured, and not a mere conditional transfer to a creditor which in effect would only give the creditor a lien upon the proceeds of the policy in event of loss to secure his unpaid indebtedness. Key v. Insurance Co., 74 S. W. Rep., 164; Ellis v. Krentzenger, 27 Mo., 314; True v. Insurance Co., 26 Fed. Rep., 83; Griffey v. Insurance Co., 100 N. Y., 417; Lynde v. Insurance Co., 139 Mass., 573; Joyce on Ins., secs. 311, 2315; 2 May on Ins., sec. 379; Ostrander on Ins., sec. 212.

Applying the rule before stated as to the construction of clauses of forfeiture in contracts of this character, we think it clear that the transfer of the policy as collateral to secure the bank should not be considered a violation of the clause prohibiting its assignment.

If the insured had the right under the policy to transfer it as collateral to secure their indebtedness the subsequent act of appellant in refusing to allow the loss-payable clause to be attached to the policy in no way affected that right, because appellant could not without the consent of the insured place any additional conditions in the policy after it was issued, and so far as Andrews & Matthews are concerned it is immaterial what construction is placed upon the letter of Messrs. Trezevant & Cochran directing that the loss-payable clause be eliminated from the policy.

It necessarily follows that as Andrews & Matthews had the right to transfer the policy as collateral, the appellee Cooke, as cashier of the bank for whose benefit the transfer was made, should not be held liable to appellant on the ground that he acted fraudulently in accepting said transfer and failing to notify appellant that it had been made, notwithstanding the fact that he was also appellant's agent, unless his acts were in violation of his known duty to appellant and by his concealment of the fact of said transfer appellant was caused to suffer loss. The refusal of the appellant to allow the loss-payable clause to be attached to the policy and its instructions to Cooke to eliminate said clause was not a notification to him that it would cancel the policy if Andrews & Matthews should transfer it as collateral. The letter of Trezevant & Cochran only informed Cooke that the appellant was unwilling to become bound by contract to pay any one other than the owner of goods for any loss that might occur under the policy. This was not saying that appellant would cancel the contract in event the insured should transfer it as collateral, or that it was unwilling that such transfer should be made.

It is not contended that the transfer of the policy increased the risk or contributed in any way to the loss. It is true that appellant now claims that it would have promptly cancelled the policy if it had known that the transfer had been made, but appellees had no notice either through the terms of the policy or from the letter in regard to the loss-payable clause, that appellant would object to the transfer of the policy as collateral. We do not think the issue of false representation or fraudulent concealment of the truth is raised by the evidence, even

if it be conceded that if appellant had been informed of the transfer it would have cancelled the policy.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused.