## SECURITY NAT. FIRE INS. CO. et al. v. SCHOTT DRUG CO. et al.

### No. 10310.

Court of Civil Appeals of Texas. Galveston.
Feb. 4, 1937.

Rehearing Denied April 8, 1937.

King, Wood & Morrow and Bryan & Bryan, all of Houston, and Frank S. Anderson and Terry, Cavin & Mills, all of Galveston, for appellants.

Williams, Neethe & Williams, of Galveston, for appellees.

CODY, Justice.

The principal question for decision in this case is, Did appellee breach the iron-safe warranty clause contained in the policies of insurance issued by the respective appellants, and which is quoted in the next paragraph, and thus void its policies?

"Record Warranty Clause

(Applied to Stock only)

"The following covenant is hereby made a part of this policy and a warranty on the part of the assured:

"Section 1. The Assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory, if such has been taken.

"Unless such inventory has been taken within twelve calendar months prior to the date of this Policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this Policy, or in each and either case, this entire Policy shall be null and void.

"Sec. 2. The assured will make and prepare, in the regular course of business, from and after the date of this Policy, a set of

books, which shall clearly and plainly present a complete record of business transacted including all purchases, sales and shipments, both for cash and on credit, or this entire Policy shall be null and void.

"The term 'Complete record of business transacted' as used above, is meant to include in said set of books, a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the Assured or by others, even though not technically purchases or technically sales.

"If the business of the Assured under this Policy be that of manufacturing, this complete record of business transacted must, in addition, show all the raw material received and all products manufactured therefrom, including the cost of manufacture, and must show waste in process of manufacture, and must show all the raw material and manufactured property which is taken from the building described.

"Sec. 3. The Assured will keep and preserve all inventories of stock taken during the current year and also all those taken during the preceding calendar year, which are on hand when this Policy is issued, and will keep and preserve all books which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.

"The assured will also keep and preserve all inventories taken after the issuance of this Policy, and all books made and prepared after the issuance hereof, showing a record of business transacted.

"The books and inventories, and each of the same, as called for above, shall be by the Assured kept securely locked in a fire-proof safe at night, and at all times when the building mentioned in the Policy is not actually open for business; or, failing in this, the Assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in event of a loss or damage insured against to the personal property mentioned herein, said books and inventories, and each of same, must be by the Assured delivered to this Company for examinations; or this entire Policy shall be null and void, and no suit or action shall be maintained hereon for any such loss.

"It is understood and agreed that this clause and the requirements thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this Policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any loss or damage happening to the property described in this Policy.

"It is further agreed that the receipt of such books and inventories, or the request for them, or either of them, and the examination of the same, shall not be an admission of any liability under this policy, nor a waiver of any provision or condition of this Policy, or of any defense to same."

To the action of appellee Schott Drug Company brought on the fire insurance policies the appellants each answered, in effect, that appellee failed to keep its books so as to comply with the warranty clause just quoted, and so forfeited any right to recover thereunder.

The evidence disclosed that, when a shipment of goods arrived, a record was made by appellant in a journal from the original invoice, showing only the name of the shipper, the date of the invoice, and the total amount of the invoice. The various items of the invoices making up the total were not recorded. Typical records were:

Sept. 1, 1933, McKesson-Southern
Drug Co.,.....................$187.30
Sept. 2, 1933, Mountain Valley Water Co.,........................55.00

The invoices were retained, but not filed in the safe, and were destroyed by the fire which occurred February 23, 1934. Whenever goods were returned to a shipper, entries were made upon the journal showing their value, and for which appellee took credit, but no memos of the returned items were preserved.

From this record of purchases, the appellants complain there was no way for them to ascertain what went into the stock of goods, whether the items were covered by the policies, or fair prices were paid for them, or what their real values were—in short, anything about such additions to appellee's stock.

The record appellee kept of its credit sales was on charge tickets which, for the current month, were kept in the safe. But at the end of each month the total for that month was transferred to the journal, and the charge tickets taken from the safe and filed away. They, too, were destroyed by the fire. And the only record appellee had of its customers' accounts, after the fire, was

a record showing the total purchases by a given customer for a given month, but which did not show the items of which such total consisted—appellee, indeed, had had such a record, but it was not kept in the safe and was destroyed by the fire.

The record appellee kept of its cash sales was not complained of.

Appellee's bookkeeper testified that with the use of the inventory taken in January, 1934, and the books in evidence which were not destroyed by the fire, he could and had determined the value of the stock on hand at the time of the fire. This he did by taking the inventory total, adding thereto the amounts of the purchases thereafter made, as shown by the journal entries, and then deducting the cash sales shown by the cash book, and the credit sales shown by the journal entries, less 33⅓ per cent. estimated profits, as:

The appellants make no claim of fraud on appellee's part.

█ As stated in Merchants' & Manufacturers' Lloyd's Ins. Exch. v. Southern Trading Co. (Tex.Com.App.) 229 S.W. 312, 315: "The purpose of the bookkeeping provision is to provide a means by the books themselves for ascertaining the amount of the loss. The insured binds himself to provide such means, and a clear violation of this provision of the contract carries with it its own consequences, which the courts have no power to alter."

█ Of the same provision, the court in Home Insurance Co. v. Flewellen Produce Co. (Tex.Com.App.) 247 S.W. 833, 834, said:

"The authorities are in accord that the warranties in insurance policies, such as are under inquiry here, must be substantially

| | |
|---|---:|
| Total inventory, January, 1934 | $32,744.28 |
| Merchandise purchases for January | 2,571.12 |
| Soda-fountain supplies | 130.00 |
| Merchandise for February | 2,387.49 |
| Soda-fountain supplies for February | 98.42 |
| Cash sales Merchandise for January | 2,793.21 |
| "     "     Soda-Fountain     " | 181.37 |
| "     "     Merchandise for February | 2,222.05 |
| "     "     Soda     "     " | 167.79 |
| Credit Sales for January | 1,093.94 |
| "     "     "     February | 991.20 |

The bookkeeper further testified, from nearly fifty years' bookkeeping experience for various mercantile establishments, that it was customary to check invoices received against the shipments of merchandise, and to enter on the journal the date of the invoice, the name of the firm, and the total amount, and it was not customary for the various items on the invoices to be entered on the books; that is, appellee but followed the usual custom in such respect.

A. F. De Loach, a public accountant, testified in effect that it was customary for retail merchants to keep the sort of record invoices of purchased merchandise, such as were here kept by appellee; and he further testified in substance that the method of recording credit sales by retail merchants generally was that followed by appellee; and so of the record of cash sales kept by appellee. And so likewise testified A. L. Joyce, accountant. And none of this evidence was disputed.

complied with, but in determining what is required a fair and reasonable construction is to be adopted, so as to effectuate the contract of indemnity rather than defeat it. *What is a substantial compliance with these requirements must be determined largely by the facts of each particular case, and this has resulted in numerous decisions, differing in results, but not necessarily in conflict with each other.* * * *

"The purpose of all these warranties, and particularly the one requiring the keeping of books, is accomplished when it is shown that the insured has kept such a record of his business as will enable a man of ordinary intelligence to ascertain from the same with reasonable certainty the amount and the value of the goods destroyed. The obligation imposed upon the insured is to furnish the insurance company, in case of loss, with such—'book account of his invoices, purchases, and sales as will show the amount of goods on hand at the time of the fire, and

thus furnish data from which to make a reasonably correct estimate of the loss or damage.' " (Italics ours.)

In Fidelity Union Fire Ins. Co. v. Barnes (Tex.Civ.App.) 293 S.W. 279, 282, the court, after quoting from Liverpool & L. & G. Ins. Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460, said: "Applying this reasoning to the instant case, the parties to the contracts of insurance must have had in mind the system of bookkeeping usually employed by merchants. If that system was regarded by the ordinary, prudent merchant as sufficient to enable him at all times to estimate with fair accuracy the value of the stock of goods carried by him, it would not be reasonable to suppose that further information was desired by the insurance company. It was concerned chiefly with providing a fair and accurate way of arriving at the loss, in case of fire."

And this court, speaking through our Chief Justice, in Scottish Union & National Ins. Co. v. Andrews & Matthews, 40 Tex. Civ.App. 184, 89 S.W. 419, 422, said: "The terms of the iron-safe clause, before set out, do not provide that all of the books used by the insured in the conduct of their business should be preserved but only required them to keep and preserve a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales, and shipments, both for cash and on credit, from the date of the inventories provided for in subsequent clauses of the policy."

■ Under the foregoing authorities, failure of the insured to itemize the goods added to its stock is no breach of the iron-safe warranty clause. Also see Standard Fire Ins. Co. v. Willock (Tex. Civ.App.) 29 S.W. 218, 219, where insured's record of purchases was shown by entries in merchandise account similar to those of appellee, and there was no itemization of goods purchased, and the books were held to be in substantial compliance with the warranty. In Ætna Ins. Co. v. Lipsitz, 130 Ga. 170, 60 S.E. 531, 14 Ann.Cas. 1070, and Western Assur. Co. v. Redding (C.C.A.) 68 F. 708, it was held that the warranty did not require the articles purchased to be shown on the books. Since the courts have long held the warranty in question does not require an itemization of the goods purchased and sold, it seems reasonable to suppose that, had the insurance companies desired this itemization, they would have expressly required it in the contracts contained in the policies they themselves prepare. As already indicated by the evidence in this case, retail merchants generally keep their books as appellee kept its books. Were the courts of the state now to change their holding and construe the warranty to require a complete record of all items shown on invoices as received and such as are returned, and a complete itemization of all credit sales, the result would be to nullify the insurance for which they nevertheless continue to pay in the full confidence they are securing protection against fire, though the only records kept of their business is like the record kept by appellee, and which is found sufficient by the ordinary prudent merchant to enable him at all times to estimate with fair accuracy the value of the goods he has stocked.

■ The fact that the records kept of the daily credit sales were burned up, and the only record preserved of these in the safe was a monthly summary, does not prevent such monthly summary from being a substantial compliance with the warranty. Such, according to the undisputed evidence, is the customary mode to keep a record of such sales; and no language of the policy specifies that the books kept shall be original entries, nor that the vouchers, statements, or memoranda supporting such entries shall be kept. Reasons for *not* keeping the sales tickets in the safe after their totals had been transferred to the books are apparent. To construe the warranty in the policies contrary to the custom prevailing as to keeping such records, and in the absence of language that expressly required this additionally to what satisfied custom and the needs of appellee's business, and thus forfeit the insurance to which appellee would be entitled except for doubtful construction, is a length to which no Texas court, so far as appellants' diligence has pointed out to us, has yet gone. Appellants have cited Commonwealth Underwriters' Agency v. Lawrence Grocery Co., 244 S.W. 200, decided by this court, as authority to the contrary. But the facts in that case were entirely different from the facts here. There was in that case a failure to make any substantial compliance with the requirements as to taking inventory. Also the family withdrew from the stock of merchandise of the value of from $50 to $90 per month,

and no record of such withdrawals was kept. There was also a pronounced breakdown in the record kept of the cash and of the credit sales. There was never any itemized record of such sales, but merely memoranda showing lump sums for the day's sales, without details of any nature, and these were not regularly or accurately kept, for the lists containing the amounts were sometimes lost and never entered on the books at all. Members of insured's family freely took small sums of cash from the cash drawer without keeping any account of them whatever; cash collected on account of credit sales was often indiscriminately mingled with the sales for cash, and lump sum records of sales for credit were kept sometimes. Many days when cash sales were made, no entry of them of any kind was made. In other words, there was no experienced bookkeeper in charge of the books in that case, and they were not kept in conformity with custom followed by merchants in such instances; and we have no doubt of the correctness of the decision of that case. No reliance could be placed in books so kept in the one case; while in the instant case the books were kept by an experienced, expert bookkeeper conformable to usual practice. And this carries us back to the portion of Home Ins. Co. v. Flewellen Produce Co., supra, which we have placed in italics for emphasis.

■ Now appellee took an item by item inventory in January, 1934, covering 218 pages. It showed, as heretofore stated, a total stock then on hand of the value of $32,744.28. The taking of this inventory of January, 1934, however, did not fulfill the requirement of the warranty in question. The insured was required to take an inventory of stock on hand at least once in each calendar year, and within twelve calendar months of the last preceding inventory, if such had been taken. Unless such an inventory had been taken within twelve calendar months prior to the date of the policy and was preserved, together with a set of books showing a complete record of business transacted from the date of such inventory, and is on hand at the date of the policy, then, in such case, an inventory is required to be taken within 30 days after the date of such policy, otherwise by the terms of the warranty the policy became void; or, more correctly perhaps, expired.

Now the stock of merchandise of appellee Schott Drug Company had formerly been owned by the J. J. Schott Drug Company, which stock was employed in conducting a like drug business at the same location for many years. The J. J. Schott Drug Company filed a petition in bankruptcy and ceased to do business on May 15, 1933; and Farb, who subsequently became president of the Schott Drug Company, when it was organized, was appointed receiver on that day, and acted as such until May 27, 1933, when the entire stock of merchandise and fixtures were sold under proper orders to one Seaman, who, in making the purchase, acted for appellee First National Bank of Galveston, from whom appellee Schott Drug Company obtained legal title on June 10, 1933. During the time the business was conducted by the receiver, it sold only for cash at retail in the ordinary course, there being no purchases to replenish stock, or sales on credit. With this stock and fixtures, appellee Schott Drug Company continued the retail drug business upon the same premises, and continued to use the same books and records, and obtained the following policies of insurance, at the dates indicated, which were more than 30 days prior to the taking of the January, 1934, inventory:

| Name of Company | Policy Number | Amount | Date |
|---|---|---|---|
| Security National Fire Insurance Company | 64988 | $1000.00 | October 5, 1933. |
| Security National Fire Insurance Company | 64955 | 1000.00 | June 1, 1933. |
| North British & Mercantile Insurance Company, Ltd. | 134924 | 1000.00 | October 15, 1933. |
| New Hampshire Ins. Co. | 2947535 | 1000.00 | October 9, 1933. |
| Westchester Fire Ins. Co. | 2187 | 500.00 | June 1, 1933. |
| American Equitable Assurance Company | F485978 | 1000.00 | October 18, 1933. |
| Albany Insurance Company | 826 | 1500.00 | June 1, 1933. |
| North British & Mercantile Insurance Company, Ltd. | 134901 | 2000.00 | July 21, 1933. |

The last inventory taken of the stock of merchandise was taken by the J. J. Schott Drug Company in February, 1933. It was fully itemized. The books of the J. J. Schott Drug Company from January, 1933, to the time it went into bankruptcy, covering all purchases and sales by it, and of the sales made by the receiver, and of the purchases and sales made by the Schott Drug Company to February 23, 1934, the date of the fire, are in evidence. And in this opinion such books have been treated, as they were treated by the different owners of the business, viz., as a unit. While the Schott Drug Company did not take an inventory within 30 days of the issuance of the policies last herein above tabulated, and did not have on hand an inventory of its stock taken by itself within 12 months preceding the date of said policies, it did have the inventory taken by its predecessor within 12 months preceding the dates of such policies and a set of books containing a complete and continuous record of all additions to, and all withdrawals from, such stock of merchandise after the taking of such inventory. So far as the bookkeeping was concerned before and after the Schott Drug Company took over the business, there was no difference. The inventory taken by J. J. Schott Drug Company in February, 1933, fitted into and bore the same relation to the retail drug business conducted at the same location in February, 1933, as did that taken in 1934. From the standpoint of the business, and of the books in which the records reflecting the business was concerned, the business was a unit, unbroken and uninterrupted by the change in ownership.

In Dorroh-Kelly Mercantile Co. v. Orient Ins. Co., 104 Tex. 199, 135 S.W. 1165, 1166, the court said:

"The contract, having been prepared by the Insurance Company to express the terms of its own undertaking, must be construed most favorably to the assured, and a substantial compliance with such terms will satisfy the obligation. * * *

"The object of having the inventory made was not to ascertain the gross value of the property insured, but to ascertain the different articles which went to make up the stock in order that the insurance company might test the correctness of the claim in two respects: (1) Whether the articles of which the stock was composed all belonged to the classes of property covered by the policy; and (2) whether the valuation attached to the different items and which went to make up the total sum expressed was reasonable. The failure to produce an inventory or that which is equivalent in these particulars could not be held to be a substantial compliance with the requirements of the policy. Roberts, Willis & Taylor Co. v. Insurance Co., 19 Tex.Civ.App. 338, 48 S.W. 559. If the assured had furnished anything from which the information contracted for could be with reasonable certainty ascertained, then the question of substantial compliance would be before the court; but, when there is no compliance whatever, there can be no question of a substantial compliance with such requirements."

In Westchester Fire Ins. Co. v. McMinn (Tex.Civ.App.) 198 S.W. 638, 639, the policies were issued on December 2, 1914, January 5, 1915, January 8, 1915. The court said:

"It is clear that it appeared from the testimony recited that the stipulation in the policy invoked by plaintiff in error was not literally complied with, in that an inventory of the stock of goods not having been taken within 12 months before the policy was issued, one was not taken within 30 days after it was issued. But whether it was a sufficient basis for a finding that the stipulation had been substantially complied with is another question. We think it was. The inventory or invoice made when defendant in error purchased the stock of goods in November, 1913, was preserved by him and tendered to plaintiff in error. * * * If the testimony of defendant in error that not exceeding $25 worth of stock covered by that inventory was sold before January 1, 1914, was true, then certainly the inventory showed, substantially, all the articles in the stock on January 1, 1914. If it did, then we see no reason why the production of that inventory was not such a compliance with the stipulation as to relieve defendant in error of the forfeiture claimed because he failed to take an inventory of his stock within 30 days after the policy was issued. By the terms of the stipulation, if he had taken an inventory within the 12 months preceding the issuance of the policy, he was not bound to take one within 30 days after it was issued. Having produced an inventory which furnished, substantially, all the information one taken within 12 months before the date of the issuance

of the policy would have contained, we think the one furnished should be held sufficient compliance with his undertaking, notwithstanding it was not taken within the limit of the time specified."

We do not consider there was any breach of the warranties in question, and, being of the opinion there was a substantial compliance with the warranty by appellee, we· hold the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

The undisputed evidence in this case shows that all the books kept by the insured were locked in the safe at the time of the fire, and were preserved. The inventory, taken in January, 1934, was an item by item record of the stock on hand when taken, and their values; and the invoices and credit sale tickets for the current month had the effect of carrying the inventory down to the date of the fire. Such inventory, invoices, and tickets were in the safe, and not destroyed by fire.

The majority of the court do not think that the failure of the insured to keep the invoices and· credit sale tickets covering former months was a breach of the iron-safe clause of the warranty. The books of insured, together with the inventory of January, 1934, and the invoices and credit sales tickets, that covered all additions made to, and deductions made from, the stock of merchandise from the time of the taking of the inventory in January, 1934, satisfied the requirements of the· warranty. The majority of the court think the motion for rehearing should be overruled, and it is so ordered.

Overruled.

PLEASANTS, Chief Justice (dissenting).

After reading the motion for rehearing and hearing the oral argument of attorney for appellant, I have reached the conclusion that this court erred in the original opinion filed herein on February 4, 1937.

Our former opinion sufficiently states the nature and result of the suit, and the issues presented by this appeal, and, with such additions and modifications as may be hereinafter indicated, a correct statement of the material facts shown by the evidence.

We say in that opinion that the invoices of goods received by the appellee prior to the fire were retained "but not filed in the safe, and were destroyed by the fire which occurred February 23, 1934. Whenever goods were returned to a shipper, entries were made upon the journal showing their value, and for which appellee took credit, but no memos of the returned items were preserved. * * *

"The record appellee kept of its credit sales was on charge tickets which, for the current month, were kept in the safe. But at the end of each month the total for that month was transferred to the journal, and the charge tickets taken from the safe and filed away. They, too, were destroyed by the fire. And the only record appellee had of its customers' accounts, after the fire, was a record showing the total purchases by a given customer for a. given month, but which did not show the items of which such total consisted—appellee, indeed, had had such a record, but it was not kept in the safe and was destroyed by the fire."

The holding in our former opinion that the record so kept and preserved by ap· pellee was a sufficient compliance with the iron-safe clause of the insurance contract, pleaded by appellant and set out in our former opinion, is not sustained by the authorities cited in the opinion.

It is apparent from a reading of our former opinion that we failed to give due consideration to the fact that the contract of insurance not only required the appellee to keep a complete set of books in its regular course of business, but to preserve all such records from fire "by placing and locking them in an iron fire proof safe at night and at all times when the building mentioned in the policy is not actually open for business; or failing in this the Assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and in event of a loss or damage insured against to the personal property mentioned, said books or inventories, and each of them, must be by the Assured delivered to this Company for examination; or this entire policy shall be null and void and no action shall be maintained hereon for any such loss."

This contract further expressly pro· vides:

"The assured will make and prepare in the regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire policy shall be null and void.

"The term 'complete record of business transacted', as used above, is meant to include in said set of books a complete record of all property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales."

This language of the contract is plain and unambiguous. There is nothing unlawful or unreasonable in such provisions, and courts are not authorized to disregard them. The fact that the books as kept may have substantially complied with the provisions of the contract relating to their preparation and contents does not fulfill the obligation of appellee's contract, even if these books were not destroyed by the fire, because the other records called for by the contract were not preserved from fire and delivered to appellant after the destruction of the goods by fire.

The following quotation from the written argument contained in appellants' motion for rehearing is adopted and incorporated in this opinion:

"The appellants have never at any time during this controversy had any complaint to make of the system of books kept by the assured. It is recognized that the books actually prepared in the regular course of business by the assured were sufficient to constitute a substantial compliance with the record warranty clause. The testimony of the accountant witness De Loach and of the other bookkeepers and accountants who testified is to the effect only that the books actually prepared by the assured were the usual and customary books kept by merchants doing that type of business. There is no testimony in the record that merchants customarily did not preserve and keep, for instance, either the original invoices or copies of them. In fact, the testimony is to the contrary, and the appellee Schott Drug Company recognized this fact by filing away and keeping its invoices for reference from time to time. The matter complained of by appellants is that such invoices were not kept either in the safe or in some safe place not exposed to the fire and therefore were burned and could not be produced after the fire. If such invoices were an integral part of the assured's records, they should have been preserved from the fire and produced after the fire. This was not done.

"These invoices, or some other itemized record of purchases, were deemed by the insured necessary to its records, were contracted for by the appellants, and served a valuable purpose to any one trying to determine whether the goods contained in the store had been purchased at fair prices and were the type of goods covered by the policies. The appellants were deprived of these records by the failure of the insured to preserve them, and the record warranty clause was thus clearly violated.

"The statements above made with reference to an itemized record of the purchases are also true as to the daily records of credit sales. The assured's bookkeeper testified that records showing the amount purchased by a given customer on a given day and showing the credit sales from day to day had been prepared in the regular course of business and were kept—but were kept outside of the safe, in violation of the record warranty clause, and were burned by the fire. If such daily records were considered by the assured as a necessary part of its records—and were kept by the assured as the evidence shows—then they were one of the books (records) which the assured was required to keep and preserve, for a year at least and the failure to preserve them worked a forfeiture of the policies."

Appellees' construction of the language of Justice Graves in the opinion of this court in the case of Commonwealth Underwriters' Agency of Republic Insurance Co. v. Lawrence Grocery Co., 244 S.W. 200, seems to be that the holding of this court in that case was that it required a violation by the insured of both the ironsafe provision and the provision requiring the keeping of a proper set of books, to render the contract of insurance unenforceable. The writer cannot believe that the learned justice who wrote that opinion had any idea that his language would be so interpreted.

The opinion of Justice Graves in the case just cited, in reference to the inventory presented to the company after the fire, which in all essentials is similar to the one presented by appellants in this case, as set out in the opinion, says:

"Concerning the itemized inventories provided for, to constitute even a substantial compliance, there must be 'an itemized list, or an enumeration, article by article, of the property,' to the end 'that the insurance company may test the correctness of the claim in two respects: (1) Whether the articles of which the stock was composed all belonged to the classes of property covered by the policy; and (2) whether the valuation attached to the different items and which went to make up the total sum expressed, was reasonable.' Roberts, Willis & Taylor Co. v. Insurance Co., 19 Tex.Civ.App. 338, 48 S.W. 559; North British Mercantile Insurance Co. v. Kemendo, 94 Tex. 367, 61 S.W. 1102."

A number of other cases are cited which fully sustain Justice Graves' opinion.

The inventory presented in this case, prepared by the trustee in bankruptcy of the J. J. Schott Corporation, the original owners of the stock of drugs which was purchased by the appellee company from the bankrupt estate, even if such inventory had been sufficient in all other respects, is not in my opinion a compliance with the provision of the contract which required the appellee "to take a complete inventory of stock on hand at least once in each calendar year and within twelve months of the last preceding inventory, if such had been taken"; but, be that as it may, the inventory presented to appellant is clearly insufficient upon the grounds stated in Justice Graves' opinion.

The original opinion in this case finds no support in the opinion of this court in the case of Scottish Union & National Insurance Company v. Andrews & Matthews, 40 Tex.Civ.App. 184, 89 S.W. 419, 421, cited by the original opinion. In the cited case, it is stated that "the only books kept by the plaintiffs were the ledger, the blotters, the cash book, and an invoice book. * * * They took an inventory January 12, 1903, and from that date they kept all the invoices or original bills of goods purchased, and exhibited same at the trial. * * * This blotter showed the name of the purchaser, and the items that he purchased, and their value or price at which they were sold. * * * The cash book and ledger were preserved in a fireproof safe and exhibited at the trial. They also kept an invoice book, in which a statement of all goods purchased was entered. This book was preserved and exhibited at the trial."

It seems clear to the writer that the cited case gives no support to the original opinion in this case. It follows from the conclusions above expressed that, in my opinion, the motion for rehearing should be granted, the judgment in favor of appellee for the loss and damage of the stock of goods destroyed by the fire which caused the loss and damage complained of in the petition should be reversed, and judgment here rendered in favor of appellant that appellee take nothing on that portion of his claim. The loss and damage to the furniture and fixtures, amounting to the sum of $3,000, is not complained of by appellant, and that portion of the judgment should be affirmed.