## TEUTONIA INS. CO. v. TOBIAS.†

(Court of Civil Appeals of Texas. Austin.
Jan. 10, 1912. On Motion for Rehearing,
March 13, 1912.)

1. WITNESSES (§ 260*) — WEIGHT OF EVI-
DENCE—QUESTION FOR JURY.

A witness may contradict a prior state-
ment in his testimony and explain the contra-
diction by showing that the prior statement
was made through inadvertence, or on a mis-
apprehension of the facts, and the jury may
accept the revised testimony.

[Ed. Note.—For other cases, see Witnesses,
Cent. Dig. §§ 897, 898; Dec. Dig. § 260.*]

2. INSURANCE (§ 335*)—FIRE INSURANCE—
CONTRACTS—CONSTRUCTION.

The purpose of the clause in a fire policy
that insured shall keep a set of books showing
a complete record of business transacted, and
include in the books a complete record of all
the property which shall go into the premises
and be added to the stock, and of the prop-
erty taken from the stock, whether by insured
or by others, is to enable insured and insurer
to ascertain from insured's books at all times
the amount of stock in his store, and where
insured was in the produce business handling
large quantities of eggs, which in part were
kept in cold storage, he must keep his books
so as to show what eggs were removed from
his store and placed in cold storage.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 853; Dec. Dig. § 335.*]

Appeal from District Court, McLennan
County; Marshall Surratt, Judge.

Action by Abe Tobias against the Teutonia
Insurance Company. From a judgment for
plaintiff, defendant appeals. Reversed and
remanded.

Crane & Crane, for appellant. W. L.
Eason, for appellee.

JENKINS, J. This suit was brought up-
on an insurance policy containing the "iron-
safe" clause. Said policy contained, among
other things, the following: "The assured
will keep and preserve all inventories of
stock taken during the current year, and al-
so all those taken during the preceding cal-
endar year which are on hand when this
policy is issued, and will keep and preserve
all books which are then on hand, showing
a record of business transacted during the
current calendar year and preceding calen-
dar year."

Appellant requested the court to peremp-
torily instruct the jury to return a verdict
for the defendant, and assigns error upon
the refusal of the court so to do. In this
we think there was error, for the reason
that the evidence clearly shows that at the
time said policy was issued the appellee had
a record of his purchases for the preceding
year, and that the same was not kept in an
iron safe, or other safe place, as required
by said policy, but was destroyed in said fire.

[1] Appellee testified: "I had the record
of my purchases as I have described for the
year 1909 at the date when the policy in suit
was issued. We had a little shelf right in
the office where I kept the record of pur-
chases for the year 1909. I did not have it
in the safe. * * * I kept the book which
was a record of our purchases for the year
1909 on a little shelf in the office with old
files and letter files. It was not in the iron
safe." This testimony, and other to the
same effect, was given in the forenoon.
When court had reconvened in the after-
noon, the appellee testified that he had pro-
duced all of the records pertaining to his
business which he had at the time the pol-
icy was issued, thus contradicting his testi-
mony previously given. It is true that a
witness may make a statement and after-
wards contradict the same, and satisfactorily
explain such contradiction by showing that
his statement was made through inadvert-
ence or upon a misapprehension of the facts;
and in such case the jury may be justified
in accepting the revised testimony of the
witness as the basis of the verdict, but in
our opinion the witness upon cross-examina-
tion of his subsequent testimony shows that
his previous testimony was the truth, and
that his amended testimony was an attempt
to meet the exigencies of the case. We can-
not see how unbiased minds could differ up-
on the proposition that the appellee's own
testimony shows that he did not comply with
the warranty clause in the policy above re-
ferred to.

[2] The court in our opinion should have
instructed a verdict for the defendant for
another reason, and that is that the policy
required the assured to make, prepare, and
keep from and after the date of the policy
a set of books showing a complete record
of business transacted. The policy defines
"complete record of business transacted" as
follows: "The term, 'complete record of
business transacted,' as used above, is meant
to include in said set of books a complete
record of all the property which shall go
into the premises and be added to the stock,
and of all property taken from the stock,
whether by the assured or by others, even
though not technically purchases or tech-
nically sales." The purpose of this clause
in the policy was to enable the assured and
the company to ascertain from appellee's
books at all times the amount of stock in
his store. The assured was in the produce
business, handling, among other things, large
quantities of eggs, which, in part, were kept
in cold storage. This clause of the policy
required of him to keep his books so as to
show what eggs had been removed from his
store building and placed in cold storage.
He did not do so. All the eggs purchased
by him were entered on his books as pur-
chases, and were received in his store build-
ing. It appears that he took receipts from
the cold storage company for eggs placed
with them, but did not make a record of
such storage in his books. It is possible,
and even probable, that, with the aid of the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Application for writ of error dismissed by Supreme Court.

books of the cold storage company, he could tell what amount of eggs he had on storage with them; but that he could not do so from his own books, notwithstanding that he asserted before the jury that he could, is shown by the fact that he was called upon to state what eggs he had with the cold storage company at the time of the fire, and the nearest he could get to said amount was $500; that is, he stated that he had from $2,500 to $3,000 worth of eggs on cold storage at the time of the fire, and even this estimate was made from receipts of the cold storage company, which he held, and not from a record in his books.

As further indicating that the jury in this case must have been influenced by prejudice, and not by the evidence, is, the fact that they returned a verdict for appellee for the sum of $1,952.45. We do not think that the evidence would have warranted a judgment for more than $334.85, as shown by the following testimony: Appellant's adjuster and appellee took appellee's books, appellee calling therefrom the items, and found that his books showed his purchases, less his sales, entered in his cash book since the taking of his last inventory in January of the current year to be $12,000. Under appellee's system of bookkeeping, drafts that he drew for goods sold were not entered in his cash book. These drafts drawn and paid amounted to $8,107.50. Appellee testified that his average profits were 10 per cent. If from $8,107.50 there be taken 10 per cent. ($810.-75), there would remain $7,296.75 to be taken from the $12,000. This would leave on hand $4,703.25; but appellee had a warehouse, not covered by his policy of insurance herein sued on. His books show that all goods were received by him in his place of business, and he kept a record of those transferred to the warehouse, and brought back from the warehouse to his place of business, showing the net amount of his purchases which were in his warehouse at the time of the fire to be $1,792. This taken from $4,703,25 would leave $2,911.25, the amount of his purchases in excess of his sales, and in excess of the amount in said warehouse. If from this there be taken the least amount named by him of goods in cold storage, to wit, $2,500, there would remain only $411.25. It was admitted that he owed $76.40, balance on premium, by reason of the readjusting of the fire rates, which would leave a balance due him of $334.85, the maximum amount for which he could have recovered judgment in this case had he complied with the iron-safe clause of his policy.

For the reasons above stated, the judgment of the trial court herein is reversed, and judgment is here rendered for appellant.

### On Motion for Rehearing.

We were in error in supposing that the books required to be kept under section 3 of the policy herein sued on were required to be kept locked in the fireproof safe at night, and at all times when the building mentioned in the policy was not actually open for business. The contradictory testimony of appellee referred to in our opinion related to the books mentioned in section 3 of said policy. Section 2, which is a warranty clause of the policy sued on, required the appellee to "prepare in the regular course of business from and after the date of this policy a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and on credit, or this entire policy shall be null and void. The term 'complete record of business transacted,' as used above, is meant to include in said set of books a complete record of all property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales." The testimony as to the goods taken from the stock and placed in cold storage, and consequently as to the value of the stock destroyed by fire, is so unsatisfactory that we think this case ought to be sent back for a new trial. The facts as to this matter are capable of being made reasonably certain.

The motion for rehearing herein is granted, and the judgment heretofore rendered for appellant is set aside, and this case is reversed and remanded.

Reversed and remanded.