Mary Lee was living with him, and performing her part of the marriage enterprise, and her servies and labor necessarily contributed to the accumulation of this particular gain.

We have found no authority in point upon the whole case, but the case of Andrews v. Andrews, 116 Wash. 513, 199 Pac. 981, by the Supreme Court of Washington, on principle is analogous.

We therefore answer the question propounded by the Court of Civil Appeals by saying that Mary Lee was entitled in her own right to one-half of the sum of money held by the Texas Company, and judgment should be rendered in her favor for the amount.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

---

HOME INS. CO. et al. v. F. C. FLEWELLEN PRODUCE CO. (No. 380–3552.)

(Commission of Appeals of Texas, Section A. Feb. 7, 1923.)

1. **Insurance** ☜335(1) — **Substantial compliance with warranties as to account books and inventories is sufficient.**

Warranties in fire insurance policies, requiring the insured to keep account books and inventories showing the value of the stock on hand, must be substantially complied with, but in determining what is required a fair and reasonable construction is to be adopted.

2. **Insurance** ☜335(2)—**Facts held to show compliance with warranty of inventories within 30 days.**

Where within 30 days after the first two policies were issued inventories of the stock were taken in connection with its sale to a corporation, and a similar inventory was taken after the third policy was issued, this was compliance with the warranties requiring an inventory to be taken within 30 days after the date of the policy.

3. **Insurance** ☜335(2) — **Inventory held to comply with requirement that it be complete and itemized.**

Inventory of a stock of feed, which showed not only the number of sacks, bushels, pounds, etc., of the different kinds of feed, but also the value per sack, bushel, and pound and the total value of each item, was a substantial compliance with the requirement of the policy for a complete and itemized inventory.

4. **Insurance** ☜335(2)—**Failure without fault to produce previous inventory held not to defeat recovery.**

Where insured produced his last inventory, and was unable to produce the first inventory because he had deposited it in a bank, where he supposed it had remained, but where it could not be found after the fire, the failure to pro-

duce the former inventory does not prevent recovery upon the policy, since such failure did not result from any negligence or design on the part of insured.

**5. Insurance ⬅335(3)—Purpose of requiring books is to enable person to ascertain value of goods destroyed.**

The purpose of the warranty in a fire insurance policy, requiring the insured to keep books, is accomplished when it is shown that he has kept such a record of his business as will enable a man of ordinary intelligence to ascertain with reasonable certainty the amount and the value of the goods destroyed.

**6. Insurance ⬅335(3)—No particular system of books required.**

The warranty of a fire insurance policy requiring insured to keep books does not require any particular system of bookkeeping, or any particular kind of books, and it must be presumed the parties contracted with a knowledge of the various modern methods of keeping books and records.

**7. Insurance ⬅335(3)—Records of purchases and sales held to comply with requirement books be kept.**

Where insured kept invoices of all his purchases and of his sales in carload lots, and also kept, in addition to his cash register record of cash sales, a slip record of each sale, on which were entered the date, the item sold, and the amount received for same, and the day sales tickets, the cash register slips, and the adding machine slips, showing the total cash sales, were pinned together and kept in a safe, there was sufficient compliance with the requirement that account books be kept.

**8. Insurance ⬅335(3)—Impermanent character of records immaterial where they were produced.**

The fact that the record kept by insured was of an impermanent character is immaterial, where it was reasonably accurate, and was on hand and presented to the adjuster after the fire.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the F. C. Flewellen Produce Company against the Home Insurance Company and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (221 S. W. 630), and defendants bring error. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiffs in error.

A. L. Curtis, of Belton, for defendant in error.

GERMAN, J. In this case the facts are not in dispute. Suit was brought by the defendant in error, F. C. Flewellen, to recover upon three insurance policies, one issued September 17, 1917, for $2,000, one September 25, 1917, for $2,000, and the other March 23, 1918, for $2,400. Plaintiffs in error sought to avoid the policies for breach of the warranty clauses, which were the usual provisions in fire insurance policies: (a) With reference to the taking of a complete itemized inventory; (b) with reference to the making and keeping of a set of books, presenting a record of the business transacted, including purchases, sales, and shipments; and (c) with reference to preserving the inventories and books and producing the same after the fire. A judgment was in favor of defendant in error for the amount of each of the policies.

The Court of Civil Appeals affirmed the judgment of the trial court (221 S. W. 630), but declined to pass on the issue as to whether Vernon's Sayles' Ann. Civ. St. 1914. art. 4874a, is applicable to the facts of this case, as that question was then pending before the Supreme Court for decision. Since the opinion in this case was rendered the Supreme Court has settled this question in the case of McPherson v. Camden Fire Insurance Co. (Tex. Com. App.) 222 S. W. 211, and we therefore hold that said article has no application to the warranties relied upon in this case.

In response to special issues the jury found that the defendant in error on September 17, 1917, October 17, 1917, and June 18, 1918, made a complete itemized inventory of the stock on hand; that the books, inventories, records, and other papers kept by the defendant in error were in substantial compliance with the record warranty clause of the policies, and were sufficient to enable the jury to ascertain the amount and the value of the goods on hand at the time of the fire. They further found that the stock of goods covered by the policies were destroyed by fire July 26, 1918, and the value of such stock at that date was $9,939.56.

Plaintiffs in error assail the findings of the jury by their contention that the undisputed evidence shows, as a matter of law, a breach of the record warranty clause in the three particulars above set out. We do not think this proposition is supported by the authorities, and have concluded that the findings of the jury are supported by the evidence.

[1] The authorities are in accord that the warranties in insurance policies, such as are under inquiry here, must be substantially complied with, but in determining what is required a fair and reasonable construction is to be adopted, so as to effectuate the contract of indemnity rather than defeat it. What is a substantial compliance with these requirements must be determined largely by the facts of each particular case, and this has resulted in numerous decisions, differing in results, but not necessarily in conflict with each other. Briefly, the facts are these:

Defendant in error was a partner with one Bassel in the firm of Bassel-Flewellen Produce Company, which began a new business during August, 1917. As soon as the stock

was received an inventory was taken, but it was not preserved. Some time in October the defendant in error bought the interest of Bassel and continued the business. At that time another complete inventory was taken, which the jury found was of date October 17, 1917. On June 18, 1918, another inventory was taken, and this was offered in evidence, having been submitted to the adjuster after the fire. This inventory shows the number of bushels, tons, sacks, and pounds of the different articles on hand, with the value of each bushel, ton, sack, and pound, and the total value of each item. The stock was practically all feed-stuff, and consisted of about 12 different items. With reference to the inventory taken October 17, 1917, the defendant in error testified that it was taken in the same way as the one of June 18, 1918, and "showed everything in stock to a nickel." This inventory was left by defendant in error at his bank, and it was his belief that it was at the bank from the time it was made to the date of the fire. After the fire a search was made for it at the bank, but it could not be found.

With the exception of a few items all of the stock of defendant in error was bought in carload lots. All invoices of these purchases were preserved and kept in a bound invoice book, which was submitted to the adjuster and produced upon the trial of the case. A few items to supply the demand of customers were bought in Temple, and these were paid for by check, a record being made on the stubs of the items purchased, the date when purchased, the name of the party from whom bought, and the price paid. These stubs were bound in a check book, which was submitted to the adjuster and used upon the trial.

Part of the sales were in carload lots. An invoice of such sales was made in duplicate, one copy being kept by the defendant in error, and these invoices, with copy of the bills of lading attached to same, were pasted in the bound invoice book. These invoices gave a detailed statement of these purchases and their cost.

The method of bookkeeping adopted by defendant in error with reference to sales other than in carload lots was as follows: When a sale was made it was noted upon a desk pad or daily sales ticket showing the articles sold, the date, and the price received. The tickets containing this memoranda were then torn off and put on a spindle. Nearly all sales were for cash and each cash sale was recorded on the cash register at the time made. A few large sales were to contractors who paid on their pay days. When sales were made to them their names were placed on the sales tickets, with statement of the purchases and prices, and when same were paid they were recorded on the cash register. At the close of each day's business the cash sales indicated by the register were checked with the sales tickets, and the various items were totaled on an adding machine. The daily sales tickets, the cash register slips, and the adding machine slips were pinned together at the close of each day's business and placed in the safe. All of these invoices, tickets, and slips were submitted to the adjuster after the fire, and produced on the trial.

The evidence is that the invoices, bills of lading, and bank book stubs showed the items of stock and the value of same that had gone into the business from the beginning; and in this manner defendant in error showed every item of stock and the value of same going into the business after the inventory of June 18, 1918. In the manner above indicated defendant in error showed the items sold from the stock and the amount received for same, and also all shipments from the beginning of the business and also from the time of the last inventory to the date of the fire. In our opinion the records and data produced by the defendant in error furnished means by which the jury could determine with accuracy the value of the stock on hand at the date of the loss, which they found to exceed the amount of the insurance. All goods were sold for cash, at a profit, and this increased the loss.

As we construe the contentions of plaintiffs in error they do not seriously question the correctness of the finding of the jury as to the amount of loss, but they do contend that the method of keeping the books and records which furnished the means by which the jury reached their conclusion was not such as the law requires to satisfy the warranty clauses of the policies. In view of the evidence and the findings of the jury we have reached the following conclusions:

[2] First. The warranty with reference to taking inventories was complied with. The first two policies were issued September 17, 1917, and September 25, 1917, and the jury found that a complete itemized inventory was made October 17, 1917. In addition the invoices and bank book stubs furnished proof of the value of all items going into the stock from the beginning. This was in effect a strict compliance with the requirement that an inventory should be taken within 30 days after the date of the policy.

[3] We have no hesitancy in saying that the inventories of June 18, 1918, and October 17, 1917, which defendant in error says were similar as to the manner in which they were made, were a substantial compliance with the requirement for a complete and itemized inventory. This conclusion is not in conflict with the case of Hartford Fire Insurance Co. v. Walker (Tex. Com. App.) 210 S. W. 682, but we think is supported by statements contained in that opinion. In that case the purported inventory merely contained a statement of the number of sacks of oats, bran, etc., with no value or grade

given at all. In the present case the inventory not only shows the number of sacks, bushels, pounds, etc., but the value per sack, bushel, and pound, and the total value of each item. For a like reason this conclusion is not in conflict with the decision in Camden Fire Insurance Co. v. Yarbrough (Tex. Com. App.) 215 S. W. 842.

[4] Second. We do not think the policies can be avoided by failure to produce the inventory of October 17, 1917. It appears that the failure to produce this inventory was not by reason of any fault, negligence, or design on the part of defendant in error. This conclusion is directly supported by the case of Assurance Co. v. Kemendo, 94 Tex. 373, 61 S. W. 1102. See, also, the case of Westchester Fire Insurance Co. v. Biggs (Tex. Civ. App.) 216 S. W. 274.

Third. We next come to consider whether or not, as a matter of law, the defendant in error failed to substantially comply with the terms of the policies requiring the keeping of a set of books. The Court of Civil Appeals treated this as the most important question for consideration, and the Supreme Court granted the writ of error on the theory that the opinion was possibly in conflict with the decision in Monger & Henry v. Delaware Insurance Co., 97 Tex. 362, 79 S. W. 7, which relates to this phase of the case.

A careful consideration of many authorities leads us to the conclusion that the books and records of defendant in error and the method of keeping same were a substantial compliance with the warranty clause in this regard. Brown v. Palatine Insurance Co., 89 Tex. 590, 35 S. W. 1060; Liverpool & London & Globe Insurance Co. v. Jones (Tex. Civ. App.) 197 S. W. 738; American Cent. Insurance Co. v. Hardin (Tex. Civ. App.) 151 S. W. 1154; Phœnix Insurance Co. v. Padgitt (Tex. Civ. App.) 42 S. W. 802; Scottish Union & National Insurance Co. v. Andrews, 40 Tex. Civ. App. 184, 89 S. W. 419; First National Bank v. Cleland, 36 Tex. Civ. App. 478, 82 S. W. 337; Westchester Fire Insurance Co. v. McMinn (Tex. Civ. App.) 198 S. W. 638; Royal Insurance Co. v. Okasaki (Tex. Civ. App.) 177 S. W. 200; Hanover Fire Insurance Co. v. Eisman, 45 Okl. 639, 146 Pac. 214, Ann. Cas. 1918D, 288.

[5, 6] The purpose of all these warranties, and particularly the one requiring the keeping of books, is accomplished when it is shown that the insured has kept such a record of his business as will enable a man of ordinary intelligence to ascertain from the same with reasonable certainty the amount and the value of the goods destroyed. The obligation imposed upon the insured is to furnish the insurance company, in case of loss, with such—

"book account of his invoices, purchases, and sales as will show the amount of goods on hand at the time of the fire, and thus furnish data from which to make a reasonably correct estimate of the loss or damage."

These stipulations require no particular system of bookkeeping and no particular kind of books. It must be presumed that the parties contracted with a knowledge of the various modern methods of keeping books and records, which the courts have recognized as being far different from the methods of a few years ago. Givens v. Pierson, 167 Ky. 574, 181 S. W. 327, Ann. Cas. 1917C, 956.

[7] In granting the writ of error herein the Supreme Court stated that they were inclined to think the decision of the Court of Civil Appeals was in conflict with Monger & Henry v. Delaware Insurance Co., 97 Tex. 362, 79 S. W. 7. We think the two cases can clearly be distinguished on the facts. In the case above mentioned there was no book entry of cash sales or business transacted from the 24th of March to the 21st day of September, except the record kept on the cash register as shown by the slips taken therefrom. Upon this state of facts the Supreme Court said:

"The 'detailed cash strips' made by the plaintiffs' cash register was in no sense a compliance with the requirements of the policy to keep a set of books, etc. The evidence showed conclusively that these strips constituted the *only* record kept by the plaintiffs of the cash sales made for about six months. We think that a set of books means something more than a loose memoranda like the strips which the plaintiffs kept, and, while it is difficult to say what will constitute a substantial compliance with such requirement to keep books, we have no hesitation in holding that the cash strips kept by the plaintiffs was not such compliance in any sense whatever."

[8] In the present case it is shown that the defendant in error not only kept the cash register slips showing cash sales, but also kept daily sales tickets on which were entered the date of sale, the item or items sold, and the amount received for same. In addition the entries on the daily sales tickets were registered on an adding machine and totaled. Then this record was checked with the cash register tickets. The daily sales tickets, the cash register slips, and the adding machine slips were pinned together and kept in a safe. By this method defendant in error was able to show a complete and correct record of all sales, other than in carload lots, from the beginning of business, and the date of the last inventory, to the date of the fire. It appears that the jury had no difficulty in arriving at the exact value of the stock destroyed by fire. While the record kept was not of a permanent character, yet it appears to have been a reasonably accurate record, and as the same was on hand and presented to the adjuster after the fire, the character of the record as to permanency becomes immaterial.

Forfeitures are never favored, and the in-

surance company, in cases of this kind, cannot avoid its contract of indemnity except upon a clear and unequivocal showing of a breach of a material warranty.

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed.

---

**FELTON v. JOHNSON.** (No. 368–3365.)

(Commission of Appeals of Texas, Section B. Feb. 14, 1923.)

**1. Justices of the peace ☞72—Exception in venue statute as to suits for "labor actually performed" does not include professional services of real estate broker.**

In Vernon's Sayles' Ann. Civ. St. 1914, art. 2308, as to suit in justice court, in county and precinct where defendant resides, the 1917 amendment (Vernon's Ann. Civ. St. Supp. 1918, art. 2308), to the exception as to written contracts, providing that suits to recover for "labor actually performed" may be brought where such labor is performed, whether the contract therefor be oral or written, the words "labor actually performed" do not include professional services rendered by a real estate broker, but carry the ordinary meaning of toil or manual exertion of a toilsome nature—(citing 3 Words and Phrases, Second Series, Labor).

**2. Statutes ☞211—Caption restricted by context of act.**

While a caption of a statute may be used as a guide and circumstance showing the legislative intent, where there is a discrepancy between the caption and the statute, it is proper to seek to account for the discrepancy by reference to the legislative history of the statute, and, where the statute and the caption conflict, the caption must yield.

Appeal from Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. N. Johnson against W. F. Felton. Judgment for plaintiff, and defendant appealed, and the Court of Civil Appeals certifies a question. Question answered.

Tatum & Strong, of Dalhart, for appellant.
Bailey & Richards, of Dalhart, for appellee.

POWELL, J. This case is before the Supreme Court on the following certificate from the honorable Court of Civil Appeals of the Seventh District:

"Appellee, J. N. Johnson, brought this suit in the justice's court, precinct No. 2 of Dallam county, against appellant, W. F. Felton, to recover $175, as broker's commission, alleged to have been earned by appellee in the sale of certain property belonging to appellant, situated in Dallam county. After trial and judgment in the justice's court, the case was appealed to the county court, where judgment was rendered for the appellee, and the appellant prosecutes this appeal to this court from said judgment. The appellant resided in precinct No. 1, Dallas county, Tex., and in proper time filed and presented his plea of privilege to be sued in the precinct and county of his said residence. Under the pleading and the evidence, the plea should have been sustained, unless the venue in Dallam county can be maintained by virtue of the following provision of article 2308, § 4, as amended by the Acts of the 35th Legislature (1917) c. 124, p. 321 (Vernon's Ann. Civ. St. Supp. 1918, art. 2308): 'Provided that in all suits to recover for labor actually performed, suit may be brought and maintained where such labor is performed, whether the contract for same be oral or in writing.' The appellee resided in Dallam county, and his services as a broker in the sale of the land, which was also situated in Dallam county, were performed in such county, and the concrete question presented by the plea of privilege is whether such services are 'labor,' within the terms of the law just quoted. The Court of Civil Appeals for the Second District, in the case of Walker v. Alexander, 212 S. W. 713, held, Judge Buck dissenting, that such services do constitute 'labor' within the terms of said act. On original hearing we followed this decision and affirmed the judgment of the lower court. On rehearing, the majority of the court became convinced that we were in error in this ruling and therefore granted the motion for rehearing, and held that the plea of privilege should have been sustained, and reversed and remanded the cause, with instructions that the plea of privilege be sustained and that the cause be transferred to the justice court, precinct No. 1, of Dallas county. This decision is, as we have already stated, in conflict with that of the Court of Civil Appeals for the Second District, in the said case of Walker v. Alexander, supra, and one of the members of this court is inclined to think that we were in error in so holding. The question thus raised, as to the proper construction of the provisions of the act referred to, is one that will be constantly recurring in the practice, and an early decision thereof is desirable, but, under the circumstances, a conclusive decision is only possible by a decision of your honorable court. We have, therefore, thought it proper, pending the final disposition of this cause, to certify to your honorable court for decision the following question: 'Did we err in holding that the plea of privilege should have been sustained under the circumstances heretofore stated?'"

[1] Article 2308 of Vernon's Sayles' Revised Civil Statutes of Texas of 1914 reads as follows:

"Every suit in the court of a justice of the peace shall be commenced in the county and precinct in which the defendant, or one or more of the several defendants, resides, except in