SECURITY NATIONAL FIRE INSURANCE COMPANY ET AL V. SCHOTT DRUG COMPANY ET AL.

No. 7278. Decided June 21, 1939.
Rehearing overruled July 26, 1939.
(129 S. W., 2d Series, 632.)

560

*King, Wood & Morrow, Bryan & Bryan,* all of Houston, *Frank S. Anderson* and *Terry, Cavin & Mills,* of Galveston, for plaintiffs in error.

Even though the insured kept a complete record of his business showing all items purchased with prices paid therefor and when and from whom said purchases were made, but leaves such record outside of his safe on the premises at night and permits it to be destroyed by fire, and after the fire can show only a list of articles purchased but not the number nor price, is not a sufficient compliance with the record war-

ranty clause of the policy of insurance, and such policies are forfeited in so far as the stock of goods insured is concerned. Merchants & Mfg. Lloyds v. Southern Trading Co., 229 S. W. 312; Allred v. Hartford Fire Ins. Co. 37 S. W. 95; Aetna Ins. Co. v. Johnson, 127 Geo. 491, 56 S. E. 643.

*Williams, Neethe & Williams,* of Galveston, for defendants in error.

The books and records kept by plaintiff met the requirements of the record warranty clauses in the policies and the evidence herein does not show as a matter of law that those warranty clauses were breached by a failure to keep and produce a set of books such as they required. Brown v. Palatine Ins. Co., 89 Texas 590, 35 S. W. 1060; Fidelity Fire Ins. Co. v. Barnes, 293 S. W. 279; Standard Fire Ins. Co. v. Willock, 29 S. W. 219.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit was filed by defendants in error, Schott Drug Company and its assignee, First National Bank of Galveston, against Security National Fire Insurance Company and fifteen others, plaintiffs in error here, which had issued fire policies covering the company's stock of drugs and fixtures. Judgment was rendered in favor of the drug company for $18,000.00 for the loss of the stock, and for $3,000.00 for the loss of fixtures. The Court of Civil Appeals, all members sitting, affirmed the judgment. 103 S. W. (2d) 979. The original opinion of the court was upheld upon rehearing by only a majority of the court in a brief majority opinion. Chief Justice Pleasants dissented upon rehearing, holding that the court erred in that part of its original opinion which affirmed the trial court's judgment for loss of the stock, and set forth his reasons for such holding in a dissenting opinion. 103 S. W. (2d) 985. There was no difference of opinion on the part of the members of the court with respect to the correctness of that part of the judgment awarding recovery for loss of fixtures and no complaint was made upon appeal of such recovery. Writ of error was granted because of the dissent upon application of the insurers.

The proof developed that the fixtures and stock of a corporation known as J. J. Schott Drug Company were utilized by the assured in the organization and operation of its business. The old company, after many years of business had been

declared a bankrupt on May 15, 1933. Between that date and June 1st following, when the present company was organized, the bankrupt stock, depleted to some extent by a bankruptcy sale conducted by the trustee in bankruptcy, A. C. Farb, was purchased by one Seaman, who, in turn transferred it to the new corporation. The new corporation was organized by Farb, Seaman and one Mehan, ninety-eight per cent of the stock being owned after organization by Farb, who became its president and general manager. None of the stockholders of the new corporation had been stockholders of the old, nor had had any interest in it. The new corporation was a separate and distinct entity from the old. The new business continued in the old location to February 23, 1934, when the fire occurred.

The case turns upon the construction of the iron safe, or record warranty clause, which is set out in full in the majority opinion of the Court of Civil Appeals. Briefly analyzed it requires, (1) the taking of inventories by the assured, (2) the making and preparation by the assured of a set of books, and (3) the keeping and preserving of such inventories and books.

The inventory requirements with respect to the time or times of taking are (1) the taking of at least one inventory each year and within twelve months of the one last preceding and (2) the taking of an inventory within thirty days after the date of the policy unless one has been taken by the assured within twelve months prior thereto. The requirements as to kind of inventory to be taken are that it shall be (1) an itemization of the stock on hand when taken and (2) that it shall be complete.

The bookkeeping requirement with respect to what the books shall reflect is that it shall *clearly* and *plainly present* "a complete record of business transacted." It is expressly stated in this connection that the term "complete record of business transacted" is used to show that it "is meant to include in said set of books, a complete record of all the *property* which shall * * * be added to the stock, and all the *property* taken from the stock." (Italics ours).

The requirements with respect to keeping and preserving the records kept are, (1) that the assured shall keep and preserve all those inventories taken during the current and preceding years, and all those taken after the issuance of the policy; and (2) that the assured shall keep and preserve all books on hand showing a record of business transacted during the current and preceding years, as well as all those made and prepared after the issuance of the policy. The alternative requirement as to where the books and inventories shall be

kept and preserved is that the assured shall keep them either securely locked in a fire-proof safe during the time specified, or in some secure place not exposed to a fire which would destroy the building. The concluding essential requirement in the matter of preserving the records kept is that the assured must deliver them to the insurer for examination in event of a loss or damage insured against.

The companies defended on the ground that the terms of the record warranty clause had been violated by the assured's failing to take an inventory required, and also had either failed to keep the necessary records, or had failed to keep them in a place such as was stipulated, and that such records had been destroyed by the fire in question.

The undisputed evidence shows that the method used by the assured to keep what is claimed to be a complete record of its additions to stock by purchase was that when a shipment of goods arrived the bookkeeper made from the original invoice a journal record showing the name of the seller and the date and *total value* of the invoice. No record was made of the unit price, the total sum of the invoice only being recorded. The invoices were assembled in a filing cabinet outside the safe and in a place on the premises exposed to the fire, and were destroyed by the fire.

A similar method was followed in keeping a record of credit-sales. The journal showed the total of such sales by the month, but the books showed nowhere to whom made. Charge tickets were made giving this information, but they were destroyed by the fire, being kept in the safe for the current month only. Customer's accounts were kept also but such account sheets were taken out of the ledger at the end of each month and were filed *in another book*. Only those sheets covering a period of three months were salvaged after the fire. The sales tickets for the month current at the time of the fire were available, but no others were found. Such was the method employed by the assured of keeping in the regular course of business a set of books showing what goods were taken from stock and the manner of preserving such record.

The undisputed evidence discloses also that at the time of the issuance of certain of the policies not necessary to enumerate there was no inventory on hand *taken by the assured* within the preceding year, and no inventory was taken by the assured within thirty days thereafter.

The assured contended that since the stock destroyed was employed in the drug business conducted continuously upon

the same premises by the assured and its predecessor in business, the requirements of the record warranty clause with respect to the taking and keeping of inventories in so far as the companies designated were concerned, were sufficiently met by the production by the assured upon the trial of the inventory taken by its predecessor within twelve months of the issuance of the policies referred to, together with a set of books presently to be described.

The assured points out that it was not engaged in conducting any character of business other than the drug business and that it produced for inspection after the fire a set of four books which it claims presented substantially the records required to be kept and preserved. The first mentioned is the journal. The nature of its entries are pointed out above. The assured itself has the following to say descriptive of the record of the merchandise purchase-account presented by the journal:

"The merchandise account in that journal also contains a record of all merchandise returned, that record consisting of entries charging the firms to which the entries were made with the amounts. * * * The records on the books of merchandise returned as well as of that purchased *do not contain an itemization* of the articles and as to the purchases consist of entries showing the *date and total amount* of each invoice and the seller's name and in cases of *returned goods* entries charging the firm to which they were returned with the *value* thereof." (Italics ours).

The following is also the assured's own statement concerning the record presented by the journal's credit sales-account:

"The journal also contains a complete record of the *total* credit sales made each month during the above mentioned periods, *no credit sales having been made while the bankruptcy receiver was conducting the business*. The entries as to the credit sales show the *total amounts* of such sales for each month but do not reflect the *articles* sold or the *names* of the *purchasers*." (Italics ours).

It should be stated in this connection that the receiver conducted a bankruptcy cash sale for a period of twelve days prior to the time the new corporation purchased the fixtures and remaining stock.

The second book of the set is a customer's ledger which appears in the evidence in the form of four exhibits containing the accounts with various purchasers buying on credit in

which the *total amounts* of the purchases made each month by each purchaser are shown.

The third is a cash book containing a record of the totals of each day's cash sales from January, 1933, to the date of the fire on February 23rd following. Its entries show the total amount of sales made for cash each day but do not show either the *articles* sold or *to whom* sold.

The fourth book of the set is a general ledger.. The assured's description reads in part:

"Accounts with the customers buying on credit were kept in customer's ledgers. Those ledgers were loose leaf books on one side of which were sheets upon which were *entered in detail* the customers account for each month. Underneath those sheets were yellow sheets upon which *carbon copies* of the *detailed* statements were made. The top sheet was removed and sent to the customer as his bill. The carbon copy was retained in the ledger until removed in order to put in a new sheet for the current month. The *carbon copies* when removed were placed in a *separate binder and were not kept in the safe and were destroyed in the fire* with the exception of those for three months." (Italics ours).

On the other side of the loose leaf was kept each customer's account in which was entered the total amount of his purchases for each month. Such sheets were retained *in the ledgers* and were in evidence.

The bookkeeper testified that he determined the value of the stock at the time of the fire by taking the total amount of the inventory taken in January, 1934, by the assured, and by adding to that amount the amounts of the purchases thereafter made, as shown by the *journal entries*, and then deducting the cash sales as shown by his cash book and the credit-sales as shown by his *journal entries*, less 33 1/3 estimated profits. In other words he determined the value of the merchandise by a process which was concerned wholly with *values* added and *values* taken away, and did not reflect what "property" was added to or taken from the stock.

It is the view of the assured that it was not required by the terms of the record warranty clause "to keep and produce 'a complete record of business transacted' showing all property * * * added to the stock and all property taken from the stock," but was only required to "make and prepare * * * *a set of books* which shall clearly and plainly present a complete record of business transacted * * * and to include in

said set of books a complete record of all property which shall * * * be added to the stock and of all property taken from the stock * * *."

The view stated, as well as the assured's view that the requirement of the record warranty clause concerning the taking of inventories, was shared by the Court of Civil Appeals upon original hearing and by a divided court upon rehearing. The majority opinion states however that while the taking of the inventory of January, 1934, did not fulfill the terms of such requirement, the inventory taken by the assured's predecessor in February, 1933, together with that taken by the assured in 1934, constituted a sufficient compliance, and obviated any necessity for its taking an inventory within thirty days from the date of certain of the policies, since the business, viewed from the standpoint of the books, reflected that it "was a unit, unbroken and uninterrupted by the change in ownership."

It is unnecessary to determine, as will subsequently appear, whether the holding concerning the requirement as to inventories, is correct.

■ We have concluded that the view to the effect that assured was required by the terms of the record warranty clause to only "make and prepare" a set of books within the meaning of the clause, and that it was not required to *keep* and *produce* the books so kept, is erroneous. The insurers make no claim that the assured did not make and *prepare* in the regular course of business the books required by the terms of the record warranty clause. The books so kept clearly and plainly present "a complete record of business transacted in that there was included therein a complete record of all purchases, sales and shipments," and of "all property * * * added to the stock and all property taken from the stock." The insurers contend however that the terms of the record warranty clause required the assured not only to *make* and *prepare* such books, but also to keep them in some secure place in the manner stipulated, to the end that the assured be able to deliver them to the insurers "in event of a loss or damage insured against."

This contention must be sustained.

To uphold assured's contention that it was not required to preserve and produce a material part of the bookkeeping record required to be kept in the regular course of business would render of no effect that requirement of the record warranty clause with respect to what should be included in such record. The language in part of the clause relating to the requirement in question is that "the assured will keep and pre-

serve all * * * books made and prepared * * *." The concluding language of the clause used in stating the requirement as to how the requisite books shall be safeguarded and what shall be done with them thereafter in event of fire, reads: "The books * * *, as called for above, shall be by the assured kept securely locked in a fireproof safe at night * * *, failing in this, the assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in event of a loss or damage insured against to the personal property mentioned herein said books and inventories, and each of the same, must be by the assured delivered to this company for examination; * * *."

The language quoted is not ambiguous as to what record the assured is required either to "make and prepare" or to "keep and preserve." The object and purpose of the bookkeeping requirement of the clause is thus stated in 39 A. L. R. p. 1443 in prefacing its annotation of the subject "sufficiency of bookkeeping to satisfy conditions of insurance policy."

"The 'iron-safe' or 'book warranty' clause does not exact any specific system or form of books to be kept by the insured, nor does it require a system of bookkeeping which will conform to the most scientific standards. The purpose of the clause is accomplished when the insured keeps his books in such a manner as to constitute a record of business transactions which a person who is of ordinary intelligence, and who is accustomed to accounts can understand, and from which he can ascertain the amounts and value of the merchandise at the time of the loss."

■ The supplementary annotation (62 A. L. R. p. 630) carries the same preface. Briefly stated, the object of the clause is to facilitate the *ascertainment* of the extent of the loss and prevent the perpetration of fraud by the assured as to the *quantum* and *value* of the goods destroyed. Home Ins. Co. v. Flewellen Produce Co. (Com. App.), 247 S. W. 833; McPherson v. Camden F. Ins. Co. (Com. App.), 222 S. W. 211; Tutonia Ins. Co. v. Tobias, 145 S. W. 251; Fidelity Phoenix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156; Cooley's Briefs on Insurance, Vol. 3, p. 2796; Encyclopedia of Insurance Law— Couch—Vol. 5, sec. 1022. Such purpose would be wholly obviated by holding that the books required to be made and prepared must include a complete record of all *property* added to the stock and all *property* taken from the stock, but that the books required to be safeguarded for delivery to the insurer for examination after the fire need not include more than the

total valuations of such property. As stated in Merchants & Manufacturers Lloyds v. Southern Trading Company (Com. App.), 229 S. W. 312:

"It certainly cannot be said that the books themselves comply either with the letter or the spirit of the bookkeeping clause, when they utterly fail to show what *property went into* or was *taken from* the premises which are designated in each policy as containing the entire subject of insurance, so far as the personal property insured is concerned." (Italics ours).

The question as to whether it was essential to include in the books a showing as to the property going into and taken from the stock, was decided in Commonwealth Underwriters Agency v. Lawrence Grocery Co. (wr. ref.), 244 S. W. 200. The assured, who was engaged in the grocery business, was held to have violated the requirement to keep "a complete record of business transacted" in failing to keep a sales record where there was no itemized enumeration of articles disposed of, but merely memoranda showing lump sums for the day's sales, irregularly kept. It was also held that the assured violated the requirement to keep a record of "all property added * * * to the stock" where she kept only a statement of names purporting to be the assured's sellers, after which appeared *lump sums* of purchases. The court thus described the record kept:

"The only record of this feature of the business for 1920 was termed the 'merchandise account,' shown in a book sent up with the record here and designated '1919 bank book.' It furnishes no details, but merely a statement of names—perhaps those of the persons from whom the goods were bought—and opposite each an amount, for instance, 'Pope Wholesale Company, $554.80,' there being nothing by which the character of the goods, the number of articles, nor the prices paid could be determined."

The court in holding such a record insufficient to constitute a substantial compliance with the bookkeeping provision of the clause, says:

"That the books and the record thus kept both failed to constitute a substantial compliance with the iron safe clause involved, and to afford an adequate basis for determining with *reasonable certainty* what actual loss resulted to the assured from the fire, seems to us, under our authorities, free from doubt." (Italics ours).

The Court of Civil Appeals in the case discussed reversed and rendered the judgment of the trial court which held there had been a substantial compliance with the record warranty clause, and this Court upheld the judgment rendered by the Court of Civil Appeals.

■ The opinion in Home Insurance Co. v. Flewellen Produce Co., supra, quoted from in the majority opinion, supports the well established rule that the requirements of the record warrantly clause need not be literally complied with but only substantially; and also supports the equally well established rule that there is a substantial compliance with the requirement to make and prepare the prescribed inventories and books when the assured makes such inventories and prepares such books in the regular course of business as will enable a man of ordinary intelligence to ascertain with *reasonable certainty* the quantum and the value of the goods destroyed. The opinion states with reference to the inventory in question that "it not only shows the number of sacks, bushels, pounds, etc., but the value *per sack, bushel, and pound,* and the total value of *each item.*" It is stated with reference to the bookkeeping record made and prepared that "it is shown that the defendant in error not only kept the cash register slips showing cash sales, but also kept daily sales tickets on which were entered the date of sale, the *item* or *items* sold, and the amount received for same. In addition the entries on the daily sales tickets were registered on an adding machine and totaled. Then this record was checked with the cash register tickets." (Italics ours).

The opinion in no wise supports the contention, however, that the bookkeeping requirement has been substantially complied with by the assured when the record of business kept and *preserved for examination by the insurer after the fire,* reflects only the total in *value* of the goods added to and taken from the stock insured. In fact the holding in that case is predicated upon the fact not only that the record kept was in substantial compliance with the bookkeeping requirement of the clause, but that such record *"was on hand* and presented to the *adjuster after the fire."* The opinion stresses the point that the terms of the clause require "no particular system of bookkeeping and no particular kind of books." While the bookkeeping record kept as discussed by the facts was not a set of books in permanent book form, information presented thereby was so assembled and systematized as to substantially comply with the record warranty clause requirement to make and prepare a set of books. The court says in this connection: "The daily

sales tickets, the cash register slips, and the adding machine slips *were pinned together* and kept in a safe." The court's further statement in this connection discloses the necessity of preserving the record kept. It reads: "While the record kept was not of a permanent character, yet it appears to have been a reasonably accurate record, and as the same *was on hand and presented to the adjuster after the fire,* the character of the record as to permanency becomes immaterial."

It is unnecessary to discuss the case of Fidelity Union Fire Insurance Company v. Barnes et al (wr. ref.), 293 S. W. 279, cited by the assured, as the facts differ materially from those of the present case. While "the permanent books did not disclose a description of each article sold, but only the amount of sales for each and every day," a satisfactory record was kept "of all additions made to the stock after the inventory was prepared and before the fire occurred." This fact, and others not necessary to mention, differentiate the cited case from the present case in material particulars.

■ Two elements underlie the purpose of the record warranty clause, namely, the ascertainment of the amount and value of the merchandise lost, and the facilitation of such ascertainment. Its requirement is not to ascertain with absolute certainty or accuracy such amount and value, and is substantially complied with when the record kept and preserved is such that the amount and value can be ascertained with reasonable certainty. The basis of the ascertainment is the property shown in the stock by the itemized inventory. Unless there is at least some semblance of itemization of property added to and property taken away shown in the books preserved for examination, the amount and value of the merchandise lost cannot be ascertained with reasonable accuracy. The requirement as a matter of law is not fulfilled when the books present a record of *values* only that are added and taken away. The object of having an itemized inventory and of keeping in the course of business a record of *property* added and taken away "is not to ascertain the gross value of the property insured, but to ascertain the different articles which went to make up the stock in order that the insurance company might test the correctness of the claim" of the assured. Dorroh-Kelly Mercantile Co. v. Orient Ins. Co., 104 Texas 199, 135, S. W. 1165.

The making and preparation of the books by the assured in the regular course of its business was in compliance with the requirment of the terms of the record warranty clause of the policy, but assured failed to comply with the further require-

ment that it preserve and produce for examination by the insurers such books as presented a complete record of the property added to and taken from the stock. The bookkeeping requirement of the clause with which the assured wholly failed to comply was "one of the inducing causes to the acceptance of the risk assumed and the issuance of this policy." A substantial fulfillment of the requirement was essential to recovery for the loss of stock. The judgments of the courts below awarding such recovery must therefore be set aside.

We agree with the holding of the dissenting opinion and adopt its recommendation that the portion of the judgment of the Court of Civil Appeals affirming so much of the judgment of the trial court as awards recovery of $3,000.00 for loss of fixtures, be affirmed; and that the portion of the judgment of the trial court awarding damages covering loss of stock and that portion of the judgment of the Court of Civil Appeals affirming same be reversed and set aside, and that judgment be here rendered that defendant in error take nothing for loss of the stock. It is accordingly so ordered.

Opinion adopted by the Supreme Court June 21, 1939.

Rehearing overruled July 26, 1939.