## NATIONAL FIRE INS. CO. OF HARTFORD, CONN., v. GREEN et al.

### No. 2445.

Court of Civil Appeals of Texas. Waco.

May 21, 1942.

Rehearing Denied June 18, 1942.

Bryan & Bryan, of Houston, and C. Eugene Alvis, of Austin, for appellant.

Scott & Wilson, Fitzpatrick & Dunnam, and W. E. Cureton, all of Waco, for appellees.

HALE, Justice.

Ben K. Green sued National Fire Insurance Company for the recovery of the face amount of a policy dated June 1, 1940, insuring him against loss by fire to the extent of $2,100 on wool contained in his barn located 12 miles northeast from Gatesville, Texas. The Insurance Company answered with a general denial and affirmatively pleaded a violation of the record warranty clause contained in said policy and fraud cn the part of plaintiff in his proof of loss claiming the destruction of 31,500 pounds of wool when in fact there was not more than 2,000 pounds in the barn at the time of the fire. Farmers State Bank of Meridian, Texas, intervened in the suit, asserting an interest in the same by reason of a written assignment from plaintiff. The jury found on special issues that 22,-979 pounds of wool, described in Exhibits 3 to 10 as hereafter set forth, was of the value of 28½¢ per pound, was destroyed by the fire in question, and that plaintiff Green kept such written record of said wool from and after June 1, 1940 as an ordinarily prudent person engaged in the wool business at the time and place in question would have kept, which record was such as would enable him, or any person of ordinary intelligence and prudence familiar with the wool business in Central Texas, to determine and ascertain therefrom the quantity, grade and price paid therefor. The court rendered judgment on the verdict in favor of plaintiff and intervener for the face amount of the policy, with interest and court costs. The Insurance Company has appealed.

Appellant contends that the court below should have granted its seasonable motions for peremptory instruction and judgment non obstante veredicto because it says the undisputed testimony established a violation on the part of appellee Green of Record Warranty Clause No. 2 in the policy sued upon. Record Warranty Clause No. 1 in said policy applied to cotton only and is therefore immaterial to this suit. Record Warranty Clause No. 2 applied to "rice, grain, wool, cottonseed, peanuts or pecans, in sacks or in bulk, including sacks containing same, owned or held in trust or on commission, or for account of others, or for which the assured may be legally liable," the material provisions thereof being as follows: (1) "The assured shall, at the beginning of each season, * * * take a complete itemized inventory showing the exact quantity and kind of rice, grain, wool, etc., * * * and if the same has been graded, priced, bought or sold, will preserve an exact record of such grade or price." (2) "The assured shall also keep a set of books and records showing the exact quantity of rice, grain, wool, etc., * * * deposited on premises and/or removed from premises, and, if any of the rice, grain, wool, etc., * * * is graded, bought or sold by assured, shall produce accurate record of the grades, quantities and prices involved in such transactions." (3) "The assured shall keep such inventory, books, records, accounts, including records of grades and prices, * * * securely locked in a fire-proof safe at night, and * *· * in the event of a loss or damage insured against to the personal property mentioned herein, such inventories, books, records, accounts, including record of grades and price, * * * and each of the same, must be by the assured delivered to this Company for examination; or this entire contract shall be null and void." (4) "This clause and the requirements thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this contract, and that the terms and requirements hereof are material to the risk."

The failure of the assured to comply substantially with the material requirements in the record warranty clause of a contract of fire insurance ordinarily defeats and avoids any recovery for loss claimed under such policy. McPherson v. Camden Fire Ins. Co., Tex.Com.App., 222

S.W. 211; Merchants & Mfrs. Lloyds Ins. Exch. v. Southern Trading Co., Tex.Com. App., 229 S.W. 312. The object of the requirement for the keeping of books or written records is to afford a basis for the ascertainment of the extent of a claimed loss in order to prevent the perpetration of a fraud by the assured as to the quantity and value of the goods destroyed. Security Nat. Fire Ins. Co. v. Schott Drug Co., 133 Tex. 559, 129 S.W.2d 632, 125 A.L.R. 342. When it is shown that the assured has kept such a record in the regular course of his business as will enable a person of ordinary intelligence to ascertain from the same with reasonable certainty the amount and value of the goods destroyed, it would seem that the purpose of such requirement has been accomplished so as to establish substantial compliance within the meaning of the contract and of the law applicable thereto. Home Ins. Co. v. Flewellen Produce Co., Tex.Com.App., 247 S.W. 833, and cases cited. Therefore, the controlling question presented for our decision on this appeal is whether the evidence in the case before us was sufficient to support the verdict of the jury.

■■ It is elemental that the duty rests upon the trial court in the first instance to find the facts in every case and unless such findings are without any support in the evidence, are contrary to the undisputed evidence, or are so manifestly against the overwhelming weight and preponderance of the testimony as to be clearly wrong, they are binding upon the appellate court. Moreover, it is the duty of the appellate court, in passing upon the sufficiency of the evidence to support the verdict of the jury, to view the testimony in its most favorable light to the prevailing party. Viewed in such fashion, we shall now note briefly some of the voluminous evidence adduced upon the trial of this case.

Appellee Green testified, in substance, that he was a rancher and trader; he lived on a ranch consisting of approximately 1,100 acres situated about 12 miles northeast of Gatesville, Texas; the wool season began in that area around April 1st of each year; on May 10, 1940, he purchased 7,154 pounds of wool from C. J. Griffin of Evant, Texas, for which he paid 28¢ per pound, amounting to the total sum of $2,038.89; said wool was delivered to him in forty sacks which were placed in the barn on his ranch; on June 1, 1940, appellant's agent at Gatesville, Texas, issued and delivered to him the policy sued upon and he paid the premium charged therefor; at that time he had about ten or twelve thousand pounds of wool, some feed stuff, harness and ranch equipment in the barn described in the policy; on June 6, 1940, he purchased 75 additional sacks of wool from C. J. Griffin for which he paid 23½¢ per pound and placed the same in his barn; he had in excess of 31,500 pounds of wool, including that which he had purchased from Griffin and that which he had clipped from his own sheep, in said barn at the time when it was completely destroyed by fire on the night of June 27, 1940; all of the wool destroyed was good quality of the reasonable cash market value of 29¢ per pound; on the day after the fire he delivered to appellant's adjuster all of the written records he had concerning the wool which consisted of the "weight sheets" previously delivered to him by C. J. Griffin at the time when he purchased the 115 sacks of wool.

These weight sheets, 8 in number, were introduced in evidence as Exhibits 3 to 10, inclusive. Each sheet bore the printed caption: "C. J. Griffin—Cotton, Wool, Mohair—Livestock—Both Phones—Evant, Texas." Following the caption, each sheet had in print the word "Name", opposite which was a blank line on which was written in pencil "Ben K. Green." Exhibits 3 and 4 were each dated "5–10–1940." The body of each of these sheets consisted of two columns of figures, the first or left-hand column being numbered consecutively from 1 to 40, inclusive. Opposite the figure "1" in the left-hand column of Exhibit 3 was written "bag wool" followed by the figures "177" in the right-hand column. At the bottom of the right-hand column of Exhibit 4 the apparent total of the figures contained on Exhibits 3 and 4 in said column was set forth as "7154." Immediately under this total was "2800," then a line under which appeared "$2038.89." Exhibits 5 to 10, inclusive, being of similar import to Exhibits 3 and 4, were each dated "6–6–1940," relating in all to 75 numbered bags in the left-hand column, containing totals of the right-hand column of figures, all of which amounted to 15,825 pounds, and ending with the figure "23½".

C. J. Griffin testified that he sold the wool as indicated in Exhibits 3 to 10 to appellee Green; that the figures in the left-hand column of each exhibit represented the bag number, the figures in the right-hand column represented the pounds of

wool in each bag, and the figures "28" and "23½" represented the price per pound for which he sold the wool and that such figures truly represented the transaction; that he had been engaged in the wool business for twenty-eight years and sold approximately three-fourths of a million pounds of wool during the 1940 season; that the records which he made and delivered to appellee Green, as evidenced by Exhibits 3 to 10, was the usual and customary method at that time and place of making records of the wool sold and purchased; that wool was not graded in the Texas market and in the absence of any notation on the Exhibits as to grade, any person familiar with market transactions in this area would understand that the wool referred to in said exhibits was the highest grade produced and sold in Central Texas.

Since the undisputed testimony showed that the wool season began in the Central Texas market about the first of April in each year, that the policy was issued June 1st before the fire on June 27th, and that wool was not graded in that area, we cannot say as a matter of law that the failure of appellee Green to take a complete itemized inventory showing the exact quality and kind of wool insured, constituted a breach of the quoted requirement contained in paragraph (1) of the Record Warranty Clause No. 2. Potomac Fire Ins. Co. v. Turner, Tex.Civ.App., 67 S.W.2d 1080. As to the other requirements of the warranty clause, we are of the opinion that the evidence to which we have referred was sufficient to sustain the findings of the jury and that such findings, when considered in connection with the undisputed testimony, were adequate to establish substantial compliance therewith on the part of appellee Green and hence to support the judgment of the trial court. Boston Ins. Co. v. Porter, Tex.Civ.App., 287 S.W. 281, error dismissed; Fidelity Union Fire Ins. Co. v. Barnes, Tex.Civ. App., 293 S.W. 279, error refused; Westchester Fire Ins. Co. v. Brantley, Tex.Civ. App., 73 S.W.2d 961, error dismissed.

Appellant also complains of the action of the court in refusing to submit in charge to the jury each of 22 special issues requested by it. All of these issues were requested in one instrument, en masse. Issue No. 1 as thus requested was whether appellee Green failed to keep written records of business regularly transacted as a wool dealer; issue No. 2 was whether he failed to keep a set of books showing the exact quantity of wool in sacks or bulk; issue No. 3 was whether he failed to keep a set of books and records showing accurate record of grades, quantities and prices involved in all wool transactions. We shall not attempt to set forth the substance of the remaining issues requested because, in our opinion, many of them were undoubtedly defective and erroneous, and related only to evidentiary matters, so as to justify the trial court in refusing to submit all of the group as requested. Terrell-Wells Health Resort v. Severeid, Tex.Civ. App., 95 S.W.2d 526, point 3, and cases cited; 41 T.J., p. 1049. However, we have examined all of the refused charges and have concluded that the questions which the trial court actually submitted to the jury reasonably embraced the disputed component elements of fact involved in the ultimate controlling issues raised by the pleadings and tendered by the evidence.

All of appellant's points and assignments have been considered, but because we are of the opinion that no reversible error is thereby shown, they are overruled and the judgment of the trial court is affirmed.